## Miller *versus* Miller.

*Actions between Husband and Wife, when allowed under Act of April 11th 1856.*

1. An action of covenant by a wife, in the name of her next friend, against her husband, to recover damages for permitting waste and destruction of real estate which had been conveyed by her without the intervention of a trustee, to him for life, by an ante-nuptial contract, is not within the 3d section of the Act of April 11th 1856, although the husband had previously separated himself from his wife before suit brought.

2. Unliquidated damages for breach of covenant are not " property" within the meaning of the Act of Assembly.

ERROR to the Common Pleas of *Chester county.*

This was an action of covenant, brought April 1st 1860, by Martha V. Miller, by her next friend James Torbert, against her husband, Joel B. Miller.

The plaintiff declared on an ante-nuptial contract entered into between the parties, under their hands and seals, by which the intended wife conveyed to her intended husband, a tract of land containing one hundred and sixty-five acres, " to hold for the term of his natural life, he to keep the same in good repair." The *narr.* averred that he did not keep the farm in good repair, but permitted waste and destruction thereon, by which it was greatly injured, and the wife damaged.

To this there was a plea of coverture filed in abatement, and a replication that the husband had separated himself from his wife, and continues to live separate, a demurrer by the defendant, and a joinder in demurrer. There was also an amended *narr.*, stating the separation; but the former pleadings raised the only question of moment in the case, which was, Can the action be sustained? The learned court below (PEARSON, J.) decided that it could not, for the reasons contained in the following opinion. After stating the case, his Honour said :—

" It is a well-settled principle of the common law that no suit will lie between husband and wife. To every action there must be parties, and as they are both treated as one, a man might as well be permitted to sue himself. It is otherwise in equity. A husband may sustain a bill against his wife in a Court of Chancery, or a wife against her husband. This difference in the power of the courts to sustain such proceedings, arises from two causes. The Courts of Chancery adopted the principles of the civil law for their guidance, in their early organization, and under that law husband and wife could contract with each other as if sole, could sue each other to obtain their rights or enforce their contracts, and hold their property in severalty for every purpose. And the practice in equity has always been to look to the

[Miller v. Miller.]

substance of the right, and bring in all parties without regard to form. If the interest of a wife was involved, she could be made a party to her husband's will, either alone or with strangers. In Pennsylvania, our courts have adopted the common law forms of action, although affecting to give relief on equitable principles. It has never been pretended that a husband could sue his wife, or a wife her husband, in this state, unless authorized to do so by an Act of Assembly. The contrary has been repeatedly decided. The only open question is, Can they sue each other by virtue of any statute?

"It is decided in Ritter v. Ritter, 7 Casey 396, that no action will lie by virtue of any provision in the Act of 1848, securing the rights of married women. Where money is lent by the wife to the husband, under the Act of the 15th of April 1851, the security must be taken in the name of a third person, as trustee, and the suit would of course be brought in the name of the trustee. If stated to be for the use of the wife, it would be treated as a mere notice of the person entitled to receive the money, and has no bearing on the form of action.

The only question remaining is, Can this suit be sustained under the 3d section of the Act of April 11th 1856? It is averred that the husband "has separated himself from his wife," and the claim is founded on an ante-nuptial contract—of course valid and binding between the parties. The act contemplates the possibility of a suit by the wife against the husband, as it provides for the wife suing in the name of her next friend; and although Mr. Justice Woodward says, in Ritter v. Ritter, that if the legislature intended that such actions should be sustained, they had a very copious language in which to express their will. They have not done it, and we should not do it by implication. It is true that he also says in the close of his opinion, that had the desertion been established, we might be obliged to sustain the action by virtue of the Act of 1856; from which, and from the words of the statute, we infer that a wife may sue her husband who has separated from her, in any case which comes within the Act of Assembly. Three cases are provided for— she may sue to protect her reputation, and to recover her separate earnings, or property.

"Is this a suit to recover her property? That she has an interest in the land, as a reversion, is very clear; but is the unliquidated damages arising from permissive waste, the kind of property referred to in the Act of Assembly? As we conceive, the statute was intended to enable her to sue for the recovery of her earnings, and also for her effects, if carried off, either by her husband or others. She might have such a property in a bond or promissory note, as would enable her to maintain an action; but unliquidated damages are not 'property,' either in

[Miller *v.* Miller.]

common parlance or technical language. If the legislature had intended to give the wife a general power to sue, as a *feme sole*, it would have said so. It can scarcely be pretended that she could recover damages from her husband on account of a battery of her person, under the provisions of this act, or that she could sue him for stoning her house, or diverting a watercourse on her farm. The legislature has undertaken to ennmerate the cases in which she may sue, and all others are omitted; *Expressio unius exclusio est alterius*, is a sound legal maxim. Had the present been an action of waste, there would be more apparent reason for supporting it, as she would be entitled to recover the place wasted, and damages. It would have been a suit for the recovery of her property; but the action is for damages merely. Such an interest would not pass by a transfer of all her property, or by an assignment under the bankrupt or insolvent laws; it would be treated as a mere personal right, as much as would the unliquidated damages arising from a trespass on the land. This may, to a certain extent, be treated as a remedial statute, and therefore entitled to a liberal construction; but as it countervails a great common law principle, which makes the husband and wife one, and overturns a salutary rule of public policy, which prohibits and discourages all litigation between husband and wife, it should be strictly construed, and not extended beyond the letter; for although no suit can be sustained between those standing in that relation, except 'where the husband shall have deserted or separated himself from his wife, or refused to maintain her,' yet these estrangements are often temporary; but should the courts encourage litigation between the parties, they will become perpetual, and it is also to be feared of much more frequent occurrence. I am therefore of the opinion that this suit for the recovery of damages on account of a covenant broken, is not authorized by the Act of Assembly.

"There is no doubt of the binding nature of the contract; it was valid, as the parties were entirely competent to make it; and had the agreement been prepared with proper skill, it could have been readily enforced. The covenants of the husband should have been made with the next friend, who could then sue as the legal party. But when that which is intended as a marriage settlement is so inartificially drawn, it can scarcely be expected to answer the purpose. Courts can only enforce the contracts as the parties make them, and if through ignorance they fail to have apt covenants, in the names of those competent to sue, the right of action must be suspended until the coverture is dissolved by death or divorce. Although we are of the opinion that this action cannot be sustained, yet Joel B. Miller will not be suffered to violate his contract with impunity; nor will his wife ultimately

[Miller v. Miller.]

suffer wrong, provided he is able to pay damages. On his death an action may be supported against his representative on the contract; or should his wife's death first occur, her representatives can sue him. The only difficulty in the way of this action, is the want of proper parties. It is a well-settled principle of law that the right of action is only suspended during coverture, and after its dissolution the wife may sue the representatives of the husband; and this has been acknowledged as the law of Pennsylvania: Towers v. Wagner, 3 Wharton 48. There the husband borrowed money from the wife, out of her separate estate, and promised to repay it, but did not, and the wife was permitted to sue for and recover it after his death, and it was held that the Statute of Limitations did not run, because she could not sue in his lifetime.

"Such contracts have been held binding ever since the case of Sleming v. Style, 3 P. W. 337, but the parties were never permitted to recover by action at law, until the death of either the husband or wife, when the representatives might sue or be sued.

"We are of the opinion that this action cannot be sustained, and give judgment for the defendant, on the demurrer."

Judgment was entered accordingly; whereupon the plaintiff sued out this writ, and assigned for error here the entering of judgment as above stated.

The case was argued by *Joseph J. Lewis*, for plaintiff in error.

The opinion of the court was delivered, January 26th 1863, by

STRONG, J.—The opinion of the learned judge of the Court of Common Pleas sufficiently vindicates the judgment on the demurrer; and for the reasons assigned by him the judgment is affirmed.

Judgment affirmed.