## Davis v. Davis

*J. Harry Pershing*, for plaintiff.

*Benjamin Hampton Davis*, p. p.

LEWIS, J., April 4, 1960.—This matter comes before the court on plaintiff's complaint seeking a preliminary injunction.

The parties are husband and wife and are sharing a common abode.

In her prayer for relief, wife-plaintiff asks for a preliminary injunction restraining husband-defendant from disposing of any of his property, wife-plaintiff being fearful her husband will dissipate his estate and she will be left without any protection.

After considering the testimony, the court makes the following:

### Findings of Fact

1. On April 1, 1956, plaintiff, who was unmarried at the time, entered into an oral agreement with defendant whereby she was to perform the duties of a housekeeper for defendant at his home for $1 per hour, but she was to work only two days a week.

2. On or about April 1, 1957, plaintiff went to live at defendant's home at 235 Mayflower Street, Pittsburgh, and continued to perform the household duties,

although she was regularly employed at the Mercy Hospital, Pittsburgh.

3. On June 1, 1958, plaintiff and defendant entered into a common law marriage.

4. Plaintiff thereafter performed the household duties on a full time basis, seven days a week.

5. On March 23, 1959, plaintiff and defendant were ceremonially married and have lived together as husband and wife ever since.

6. After the parties were married, plaintiff, in addition to attending to her household duties, took care of her husband's apartment rentals, the apartments which the husband-defendant rented being in the same building where the parties to this suit reside.

7. Defendant has an income of approximately $376 per month, made up largely of Social Security benefits and apartment rentals.

8. Husband-defendant pays all necessary household bills and expenses but has discontinued paying wife-plaintiff for her household services as he did before their marriage.

## Discussion

This matter is before the court on plaintiff's complaint seeking a preliminary injunction. No attorney has appeared for defendant. Defendant acted as his own counsel at the hearing.

The history of the case by plaintiff, as developed from the testimony, is as follows:

On April 1, 1956, plaintiff, who was unmarried at that time, entered into an oral agreement with defendant, whereby she was to perform duties as a housekeeper for defendant at his home for $1 an hour. She was to work from 8 a.m. to 6 p.m. During this time, she had regular employment as a telephone switchboard operator at the Mercy Hospital in Pittsburgh, and she was to perform the household duties on her days off. She had two days off each week.

About one year later, plaintiff went to live at defendant's home at 235 Mayflower Street, Pittsburgh. For a time, up until June 1, 1958, she continued her regular employment at the Mercy Hospital and performed her household duties on her days off.

On June 1, 1958, plaintiff and defendant entered into a common law marriage. Thereafter, plaintiff performed the household duties on a full time basis, seven days a week. Since that time, although the date is not given, plaintiff and defendant were ceremonially married, after having taken out a marriage license in Greensburg.

In addition to her duties in and about the household, plaintiff helped manage her husband's apartments, which were in the same building where they made their home.

Defendant has an income in the amount of $376 per month, made up of Social Security benefits, and apartment rentals. He also has substantial holdings in real estate.

Plaintiff alleges that divers persons have approached defendant for loans or gifts, and defendant, being a person who is easily persuaded, may become the victim of designing persons. Plaintiff alleges she is fearful that he may dissipate his estate.

There are some allegations to the effect that plaintiff has received physical abuse from her husband-defendant. However, plaintiff and defendant are at present cohabiting as husband and wife, and she strongly insists that she intends to continue to so live with defendant as his wife.

Plaintiff admits that defendant pays the necessary household bills and expenses, but complains that he does not pay her anything for her services in accordance with their agreement entered into prior to the marriage. She refers to this agreement as an antenup-

tial agreement, although it is not so alleged in the complaint.

Plaintiff alleges that after their marriage, defendant promised to make her the sole beneficiary under his will, and to name her as beneficiary on his insurance policies.

In her prayer for relief, plaintiff asks for a preliminary injunction, restraining defendant from conveying or mortgaging his real estate, and from disposing of his personal property, without leave of court and the written consent of plaintiff. She also asks for a suitable amount as separate maintenance pendente lite and for counsel fees.

At common law, the general rule was that a husband and wife could not sue each other. This was based on the concept of unity of person, the individual identity of the wife during coverture being merged into that of her husband. To permit husband and wife to sue each other would have been the same as permitting a person to sue himself: 26 Am. Jur. 632, Husband and Wife, §3. This common law rule was subject to the following qualifications:

The ecclesiastical courts recognized the existence of the spouses in matters of divorce, and equity recognized the separate existence of the spouses to the extent of entertaining suits to protect the right of married women under sole and separate use trusts: 27 Am. Jur. 183, Husband and Wife, §584.

By the Act of April 11, 1848, known as the Married Women's Emancipation Act, the Pennsylvania Legislature made changes in the common law. Act of April 11, 1848, P. L. 536, section 6, 48 PS §31. However, these changes did not have the effect of making husbands and wives fully competent to sue each other on all causes of action, and under all circumstances. Rather, the courts interpreted the statute to say that except in those situations where public policy de-

manded a contrary result, neither spouse should be permitted to sue the other for the reason that litigation between the spouses disturbed domestic peace and tranquility. Thereafter, such litigations were prohibited, subject only to certain qualifications.

One of the circumstances where it has been held that public policy requires that one spouse be permitted to sue the other, was in proceedings to protect or recover separate property. This was expressly provided for subsequently by statute: Act of June 8, 1893, P. L. 344, as amended by Act of March 27, 1913, P. L. 14, 48 PS §111.

Apparently, plaintiff seeks relief on the theory that the facts in this case indicate she has sole and separate property. However, there is nothing in the facts alleged which would show that she has any separate property. She does not claim that she had any property when she married defendant nor that she brought anything with her. She does not allege that she loaned him any money, or gave him anything to hold in trust for her. She does not claim a gift.

Under the facts mentioned above, plaintiff has no separate property.

The statute conferring the right on each spouse to sue the other to "protect and recover separate property" has not been construed to be broad enough to permit actions by one spouse against the other to enforce any and all actions which he or she might separately have against the other. This could not have been the construction intended by the legislature, because it would have entirely abolished the rule prohibiting such suits, rather than making certain exceptions. See Miller v. Miller, 44 Pa. 170; Johnston v. Johnston, 7 Dist. R. 555; 27 Am. Jur. 190, Husband and Wife, §588.

It has been held that a suit in equity to compel one spouse to return property owned by the other spouse

58

is proper: Ramsey v. Ramsey, 351 Pa. 413, 171 A. L. R. 425.

However, it is the law in Pennsylvania that an action by one spouse to recover damages from the other, for breach of contract is not for the protection or preservation of separate property, and hence there can be no recovery between husband and wife during coverture: Miller v. Miller, 44 Pa. 170.

Plaintiff claims defendant owes her the total sum of $5,670. This sum is made up of $1,680 for services prior to the marriage, and $3,990 subsequent to the marriage.

As to the claim to be due and owing prior to the marriage, it appears that she may not maintain this suit under the authority of the case mentioned above, i.e., Miller v. Miller, supra.

As to the agreement to compensate plaintiff for her services during coverture, it would appear that such an agreement would be without consideration and, therefore, unenforceable. One of the duties imposed on the wife by the marital relation is the duty to render service to her husband: Rodgers v. Campbell, 4 Dist. R. 614, 7 Pa. C. C. 72.

The services of the wife to which the husband is entitled include those rendered by the wife in the performance of her household and domestic duties, as well as those rendered by his wife while assisting the husband in his business. While this point has scarcely been questioned in Pennsylvania, it has arisen in New York State: Blaechinska v. Howard Mission and Home, 130 N. Y. 497, 29 N. E. 755.

It is admitted that in some circumstances a husband may contract directly with his wife for the performance of extra and unusual services in the course of his business outside of the family relation. See Nuding and Schlouch v. Urich, 169 Pa. 289. In that case, the wife worked as a cook in her husband's restaurant.

However, the suit was not between husband and wife, but rather between the wife and certain creditors of her husband. The wife was able to obtain a creditor's standing and share in the distribution of the proceeds of a judicial sale of her husband's property, for her services performed as an employee.

In the case before the court, plaintiff did not perform what could be termed extra and unusual services. She merely performed her household duties, including the routine payment of the bills with her husband's money, and did the shopping. She also ministered to his needs on account of his ill health. The management of his apartment rentals was performed while she was living in his home, as a member of his household. None of these duties are anything more than would normally be expected of any wife under similar circumstances. Therefore, it is clear that here defendant-husband is entitled to the services, without compensating her, and the agreement lacks consideration, which is essential to an enforceable contract.

As to an injunction restraining defendant from conveying or mortgaging his real estate, it is the general rule, both at common law, as well as today, that a married man has capacity to convey his real estate, notwithstanding the fact that his wife does not join in the deed: 26 Am. Jur. 795, Husband and Wife, §172.

A husband may transfer his interest in property without the consent of his wife: Windolph v. Girard Trust Co., 245 Pa. 349.

In Magill v. Magill, 20 Del. 200, it was held that where husband and wife live together, equity will not restrain husband from encumbering or disposing of his property.

And it has been held that a man may exercise absolute power over his personal property, without his wife's consent, since her rights attached thereto only

at his death, and she cannot impeach, as a fraud upon her, a voluntary gift made by her husband during his lifetime: Lines v. Lines, 142 Pa. 149; Evans v. Dravo, 24 Pa. 62.

The following excerpt appears in the opinion of a Supreme Court decision:

"A man may do what he pleases with his personal estate during his lifetime since his wife has no right, title or interest in such property until after his death; therefore he may make a gift of it even though he does so for the purpose of preventing his wife from inheriting any portion of it": Cancilla v. Bondy, 353 Pa. 249.

Therefore, it is clear that plaintiff has no right to prevent defendant from selling or otherwise disposing of his own property.

Plaintiff alludes to an antenuptial agreement. However, no such agreement was made a part of the complaint, and therefore, cannot be considered in this opinion.

As to wages plaintiff may have earned prior to the marriage, even if the case did not come within the prohibition of the law as to suits between husband and wife, she should have no standing in a court of equity. Since plaintiff is seeking to recover a sum certain, she would have a full, complete and adequate remedy at law in assumpsit.

Where a party has a full, complete and adequate remedy at law, equity does not have jurisdiction: Hyde v. Baker, 212 Pa. 224; Knup v. Philadelphia 386 Pa. 350; Paton v. Clark, 156 Pa. 49.

As to plaintiff's claim for a suitable amount as separate maintenance, it is clear that she is not entitled to this relief. She admits that she lives in defendant's home, as his wife, and that he pays the expenses. No amount could be awarded under these circumstances. While she may not be living in luxury, or in the manner in which she believes she is entitled to live, she is

nevertheless being supported to the extent that the law requires.

As to the amount for counsel fees, again it must be said that she is still living with her husband as his wife. Whatever her hardships may be, apparently they are not sufficient to require her to leave. This court will not encourage this type of litigation by allowing counsel fees.

Therefore, it is the opinion of the court that plaintiff is not entitled to the relief sought, and the preliminary injunction will be denied.

### Order of Court

And now, to wit, April 4, 1960, it appearing to the court that plaintiff is not entitled to the relief sought, the preliminary injunction is hereby denied, and the complaint dismissed.