No. 43,809

A. R. O'GRADY, *Appellee*, v. RICHARD D. POTTS, *Appellant*, and KENNETH LAYTON, by and through EARL L. LAYTON, his father and next friend, *Defendant*.

(396 P. 2d 285)

Opinion filed November 7, 1964.

*Gerald Sawatzky*, of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Ronald K. Badger* and *Benjamin C. Langel*, all of Wichita, were with him on the brief for the appellant.

*John C. Frank*, of Wichita, argued the cause, and *Patrick F. Kelly* and *James P. Johnston*, both of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: The question of law presented by this appeal is whether a plaintiff may, after becoming the wife of the defendant, continue to maintain an action against her husband for an alleged tortious act under the guest statute which occurred before the marriage.

The foregoing issue is crystallized by the pleadings of the respective parties.

It is immaterial to relate in detail the various pleadings of the parties, except to state that this is an action by Miss A. R. O'Grady (plaintiff-appellee) seeking to recover damages under the guest statute for gross and wanton negligence against Richard D. Potts

(defendant-appellant), and for ordinary negligence against the driver of another automobile, one Kenneth Layton, a minor, who is not involved in this appeal.

The sequence of events established by the pleadings shows that the accident occurred on October 21, 1961; and that thereafter O'Grady filed her action against Potts. Subsequent to the filing of the action O'Grady and Potts were married, presenting the issue heretofore stated.

The appellant Potts contends that the appellee, as his wife, by reason of the marriage is prohibited from proceeding against him.

In January, 1952, this court had occasion to consider whether a married woman may maintain an action in tort for injuries to her person against her husband in *Sink v. Sink*, 172 Kan. 217, 239 P. 2d 933. There the plaintiff wife was a passenger suing her husband, who was the driver. At the time the accident occurred the parties were husband and wife. The court, after reciting the common law and considering the Married Women's Act, held that neither spouse may maintain an action in tort for damages against the other. In the numerous authorities cited the court noted that recovery in such cases was almost uniformly denied, unless there was a specific statute of the state which authorized recovery. It thereupon adhered to the common law and affirmed the reason normally given by courts for a refusal to permit such an action—that it would be contrary to public policy and tend to disrupt the marital relation.

The appellant contends *Sink v. Sink*, supra, controls the decision herein. On the facts, however, there is a distinction. In that case the parties were husband and wife at the time the accident occurred, while in the instant case the parties were not married at the time the accident occurred, and the action was filed by the plaintiff prior to the marriage of the parties.

At common law neither spouse may maintain an action sounding in tort against the other. This rule applies to injuries both to person and to property.

Furthermore, at common law neither spouse may maintain an action against the other for a tort committed before marriage. As the rule is usually stated, at common law marriage extinguishes the right of action for a personal tort committed by one spouse against the other before marriage, as, for example, where the woman who sustains the injury subsequently marries the tortfeasor, even though they were living apart at the time the action was commenced. (41 C. J. S., Husband and Wife, § 396, p. 877; and 27 Am. Jur., Husband and Wife, § 589, p. 191.)

Hundreds of cases have been decided on the subject, many of them very recently. Treatises and articles without number have delved into every phase of the question. *Sink v. Sink*, supra, cites many of the texts, annotations and cases. Since that time, a more recent annotation entitled "Right of one spouse to maintain action against other for personal injury" (43 A. L. R. 2d 632) has collected recent cases, which are brought up to date in the A. L. R. 2d Supplement Service. The writers there state:

"The courts in a majority of jurisdictions have adhered to the common-law rule that one spouse has no right of action against the other to recover damages for personal injuries caused by the other." (43 A. L. R. 2d 636.)

"In jurisdictions denying a spouse the right to sue the other spouse for personal injuries, it is generally held that the disability obtains notwithstanding that the wrong for which recovery is sought occurred prior to the marriage of the parties." (43 A. L. R. 2d 642.)

In other words, in those jurisdictions having no statute modifying the common law rule, which denied one spouse the right to maintain a tort action against the other, the common law prohibits the maintenance of such suits, regardless of when the alleged tort itself occurred. Inasmuch as every phase of this problem has been discussed at great length in scores of judicial decisions and by many eminent textwriters, discussing the weight of authority pro and con, a repetition of what has been well done would serve no useful purpose.

We shall now turn to our statutes to see whether the common law rule has been modified with respect to the factual situation presently before the court.

The Constitution of the state of Kansas, adopted July 29, 1859, in Article 15, Section 6, provides:

"The legislature shall provide for the protection of the rights of women, in acquiring and possessing property, real, personal and mixed, separate and apart from the husband; and shall also provide for their equal rights in the possession of their children."

In 1868 the legislature pursuant to the foregoing provision of the Constitution adopted a statute which now appears as G. S. 1949, 77-109. It reads:

"The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state, but all such statutes shall be liberally construed to promote their object."

Justice Burch, in speaking of the foregoing statute in *Clark v. Allaman,* 71 Kan. 206, 80 Pac. 571, said:

". . . Rules of law have their birth, growth and decay, like generations of men, and in order to meet the expanding needs of the inhabitants of the young commonwealth the legislature enacted the statute of 1868 continuing in force the common law only as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people." (p. 230.)

It is clear when a Kansas statute has been enacted which reasonably covers a common law subject matter, such statute will prevail, it being entitled to a liberal construction.

Under the Married Women's Act, G. S. 1949, 23-201, enacted in 1868, provides:

"The *property, real and personal, which any woman in this state may own at the time of her marriage,* and the rents, issues, profits *or proceeds thereof,* and any real, personal or mixed property which shall come to her by descent, devise or bequest, or the gift of any person except her husband, *shall remain her sole and separate property,* notwithstanding her marriage, and not be subject to the disposal of her husband or liable for his debts." (Emphasis added.)

G. S. 1949, 23-203, enacted in 1868, provides:

"A woman may, while married, sue and be sued, in the same manner as if she were unmarried."

These statutes being in derogation of the common law must be liberally construed to promote their object.

The provisions of G. S. 1949, 60-404, enacted in 1909, are similar to the provisions of 23-203, *supra,* but have been repealed by the legislature in 1963 when it enacted the new civil code.

In *McCarty, Adm'r, v. Quimby,* 12 Kan. 494, it was held where a wife exercises acts of ownership over personal property, if there is any presumption of ownership from such acts, it is that the property belongs to the wife.

With respect to the Married Women's Act, *Norris v. Corkill,* 32 Kan. 409, 4 Pac. 862, recognized that the common law rule, which made the husband liable for the tort of the wife committed during coverture, was changed. There the Married Women's Act was construed to make a married woman responsible for her own torts even though the statute said nothing specific concerning an intention to do so.

Justice Burch in *Harrington v. Lowe,* 73 Kan. 1, 84 Pac. 570, said:

"These constitutional provisions [Const., art. 15, §§ 6, 9] themselves irretrievably broke down the common-law theory of marital unity, destroyed the notion of feminine subjection to baronial authority, threw off the restraints of

coverture, and installed the modern doctrine of the equality of man and wife before the law. Legislative acts based upon the same principles speedily followed, until not only does a married woman have the right to acquire, possess and dispose of her own property in her own way, free from her husband's dictation and domination, possess the homestead equally with him and defeat its alienation, if such be her will, make and fulfil contracts for her services, keep her own earnings, conduct her own business and retain the profits, buy from her husband and sell to him as if he were a stranger, sue and be sued, make a will, educate and control her children equally with her spouse, and govern her own conduct free from his interference or restraint, but she is authorized to attend political caucuses and conventions, nominate candidates, vote at municipal and school elections according to her own independent judgment and inclination, and to hold public offices of profit, trust, and honor. . . ." (pp. 18, 19.)

Justice Burch then enunciated a guideline for interpretation:

"Therefore the one-person idea of the marriage relation as expounded by the common-law authorities can no longer be made the touchstone of a married woman's rights or capacities in this state. Her powers and responsibilities do not depend upon the principle of unity, but upon the principle of diversity. True, some adumbrations of the doctrine are shown by our law, and so far as they have become fixed and settled rules must be respected. But coverture is an obsolete relation. It flourished originally in the atmosphere of caste and privilege, and it has gone the way of the *patria potestas* and chattel slavery.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"There is no longer any reason for the common-law doctrine relating to the contracts of married women, and with the death of the reason for it every legal doctrine dies. . . ." (pp. 20, 21.)

In the instant case the appellee acquired a cause of action against the appellant at the time the accident in question occurred because they were not husband and wife.

A cause of action is commonly referred to in law as a *chose in action*, which has been defined in 42 Am. Jur., Property, § 26, p. 207, as follows:

"A chose in action has been defined as a personal right not reduced into possession, but recoverable by a suit at law. It has been defined also as a thing of which one has not the possession or actual enjoyment, but only a right to or a right to demand by an action at law. . . . The chose in action is the right of the creditor to be paid, while the debt is the obligation of the debtor to pay. Choses in action are personal property, although the terms, purpose, or application of a particular statute may be such as to require a construction which does not so include them. . . ."

In Kansas a *chose in action* is personal property. (G. S. 1949, 77-201, *Ninth;* and *State v. Water Co.*, 61 Kan. 547, 561, 60 Pac. 337.) Since the chose in action in the instant case accrued to the ap-

pellee at the moment the wrongful act was committed by the appellant, it was the appellee's separate property under the proviso of our statute (23-201, *supra*) which states "the property, real and personal, which any woman in this state may own at the time of her marriage, . . . or proceeds thereof, . . . shall remain her sole and separate property." The cause of action, which constituted personal property, arose and vested in the appellee at the time of the accident, and was owned by her from that day forward. She thus owned it prior to her marriage to the appellant and it is her separate property.

The character of the property owned by the appellee must be determined by its status at the time of acquisition; hence, any subsequent change in the appellee's marital situation could have no effect upon the separate nature of the property which she owned prior to the marriage, and which followed her into the marriage. No further authority than 23-201, *supra*, providing that the property which any woman owns at the time of her marriage, "shall remain her sole and separate property," need be cited to sustain the proposition that the wife cannot be prevented from dealing with her separate property as she sees fit, nor can she be prevented from resorting to whatever legal process may be necessary to protect her interest in that property, whether it be a chose in action stemming from tort or contract, or a parcel of real estate.

Because of the separate nature of any recovery the appellee might receive upon her cause of action, the entire transaction must be regarded as one by the wife concerning her separate property, as to which no disability to litigate can be asserted by the appellant, even though the appellant happens to be her husband instead of a third party. Nothing in the provisions of 23-203, *supra*, can provide comfort to the appellant in his attempt to deny the appellee the right to pursue her separate property interests. The distinguishing feature in this case from that presented in *Sink v. Sink*, supra, is the fact that the right accrued to the wife in the instant case prior to the marriage. This conclusion must follow because had the matter been first pursued to judgment, the subsequent intermarriage of the parties could have had no more effect upon the legal collectibility of such judgment than upon a judgment obtained against a third person prior to marriage. Such a judgment would constitute the wife's separate property. In the same manner, the right to recover

damages for a personal injury, as well as the money recovered as damages, is property. The circumstances of the litigants' intermarriage prior to the rendition of a judgment cannot operate to deprive the wife of property which is rightfully hers. (*Carver v. Ferguson,* 254 P. 2d 44 [Cal. App. 1953].)

The judgment of the lower court is affirmed.

PARKER, C. J., and PRICE, J., dissent.