DiGirolamo et al., Appellants, *v.* Apanavage.

Argued April 24, 1973.   Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*George A. Hahalis,* with him *Terrence C. Grube,* for appellants.

*Jackson M. Sigmon,* with him *Sigmon, Littner & Ross,* for appellee.

OPINION BY MR. JUSTICE EAGEN, December 4, 1973:

Sarah DiGirolamo was injured in an automobile accident while riding as a passenger in a vehicle operated by Anthony R. Apanavage. At the time she was unmarried and a minor. Approximately one year later she married Anthony Apanavage. Subsequently, as Sarah DiGirolamo Apanavage [appellant], she instituted this action against her husband, Anthony R. Apanavage [appellee] seeking damages in excess of $10,000, alleging he had "operated his motor vehicle in such a careless and negligent manner as to cause . . . extensive personal injuries to the body of the [appellant] . . . ."[1]

Appellee filed preliminary objections to the complaint, asserting appellant lacked the capacity to sue him because she was his wife. The trial court sustained the preliminary objections and dismissed the complaint. On appeal, the Superior Court affirmed the action of the trial court. *DiGirolamo v. Apanavage,* 222 Pa. Superior Ct. 74, 293 A. 2d 96 (1972).[2] We granted allocatur and now affirm.

The basic issue raised in this appeal is whether or not a wife may maintain an action against her husband for personal injuries caused by a tort committed prior to marriage.

By statute enacted in 1856,[3] the legislature of this Commonwealth prohibited a married woman from in-

---

[1] Appellant's father was also a plaintiff in the action. He sought damages for medical expenses incurred as a result of the injury to his daughter. However, he has not briefed or argued any issues before this Court; thus, the impact of the instant decision in no way affects his suit. See *Meisel v. Little,* 407 Pa. 546, 180 A. 2d 772 (1962).

[2] Judge PACKEL filed a dissenting opinion, in which Judge HOFFMAN and Judge SPAULDING joined.

[3] See Act of April 11, 1856, P. L. 315, §3.

stituting a legal action against her husband, except in a few specified situations. One such instance was if the husband deserted or separated himself from his wife, she was given the right to institute an action against him to "recover her separate earnings or property." In 1893, the legislature repealed the Act of 1856, and in its stead enacted the Act of June 8, 1893, P. L. 344, 48 P.S. §111. In Section 3, the Act of 1893 provided, in relevant part, that thereafter a married woman may sue and be sued civilly, in all respects as an unmarried person, but she could not sue her husband, except in a proceeding for divorce or in a proceeding "to protect and recover her separate property." The Act of 1893 was subsequently supplanted by the Act of March 27, 1913, P. L. 14, §1, 48 P.S. §111, but Section 3 of the Act of 1893 was incorporated therein without change.[4] Throughout the legislative history of interspousal immunity, the legislature has consistently adhered to the use of the term "separate property."

This Court in interpreting the "separate property" language of the interspousal immunity statute has consistently adopted the view that unliquidated damages are not property within the meaning of the statute. In

---

[4] The statute presently reads: "Hereafter a married woman may sue and be sued civilly, in all respects, and in any form of action, and with the same effect and results and consequences, as an unmarried person; but she may not sue her husband, except in a proceeding for divorce, or in a proceeding to protect and recover her separate property; nor may he sue her, except in a proceeding for divorce, or in a proceeding to protect or recover his separate property; nor may she be arrested or imprisoned for her torts." The statute is merely codification of the common law. In *Meisel v. Little*, 407 Pa. 546, 180 A. 2d 772 (1962), we recognized this stating: "At common law *neither* a husband nor wife could sue the other for injuries due to torts committed before or during their marriage. This was based upon the legal premise that a husband and wife are one person, one entity. See, Prosser on Torts, 2d Ed. 670 (1955)." Id. at 548, 180 A. 2d at 773.

1863, this Court in *Miller v. Miller,* 44 Pa. 170 (1863), ruled an unliquidated tort claim was not "property" as that term was used in the Act of 1856. The Court adopted the following language: " '[I]s the unliquidated damages arising from permissive waste, the kind of property referred to in the Act of Assembly? As we conceive, the statute was intended to enable her to sue for the recovery of her earnings, and also for her effects, if carried off, either by her husband or others. She might have such a property in a bond or promissory note, as would enable her to maintain an action; but unliquidated damages are not "property", either in common parlance or technical language. If the legislature had intended to give the wife a general power to sue, as a *feme sole,* it would have said so. . . . The legislature has undertaken to enumerate the cases in which she may sue, and all others are omitted. . . .' " Id. at 171-72.

More recently, in *Meisel v. Little,* 407 Pa. 546, 180 A. 2d 772 (1962), this Court again had an opportunity to construe the meaning of the "separate property" language in the statute and we stated: "unliquidated claims of damage are not 'property' within the meaning of the Act." The *Meisel* case is directly on point with the instant case. See also *Falco v. Pados,* 444 Pa. 372, 282 A. 2d 351 (1971). In light of the consistent position of this Court on the meaning of the term "separate property," and the fact that the legislature has failed to change the language of the statute, we must presume that the interpretation given to the pertinent language is consistent with the legislative design.

Moreover, the view that an unliquidated damage claim is not "separate property", is not only consistent with the legislative design, but it is also valid for two other reasons. First, property may be defined in a number of ways, but one of the more workable defini-

tions is: the right of any person to possess, use, enjoy, and dispose of a thing. Cf. *Willcox v. Pennsylvania Mutual Life Insurance Co.*, 357 Pa. 581, 55 A. 2d 521 (1947). An unliquidated damage claim does not enjoy all the attributes of property, however, since it may not be assigned. See *Sensenig v. Pennsylvania R. R.*, 229 Pa. 168, 78 A. 91 (1910) ; *Manganiello v. Lewis*, 122 Pa. Superior Ct. 435, 186 A. 218 (1936). Hence, an individual may not "dispose" of an unliquidated damage claim in a manner in which he may normally dispose of other objects. Secondly, our legislature did not let the matter of interspousal immunity die with the enactment of the Married Women's Property Act,[5] which invested the wife with the legal power of owning "every species and description of property, whether consisting of real, personal or mixed which may be owned by or belong to any single woman. . . ." By itself, the effect of the language of this Act may have been to abolish the common law immunity between spouses; however, our legislature went further and preserved some of the common law by enacting the statute herein under discussion. If "separate property" is read in the instant statute as having the same meaning as "every species and description of property" in the Married Women's Property Act, the interspousal immunity statute would be meaningless, since every suit between spouses would be to protect or recover "separate property." It is therefore apparent "separate property" as defined in the immunity statute has to be lesser in scope than an all encompassing definition of property.

We are urged to follow the reasoning of *Falco v. Pados*, supra, a case involving parental immunity, as well as the decisions of other jurisdictions dealing with

---

[5] Act of April 11, 1848, P. L. 536, §6, 48 P.S. 64. This statute was repealed in part by the Act of April 11, 1856, P. L. 315, and to a large extent supplemented by the Act of June 8, 1893, P. L. 344.

interspousal immunity,[6] and do away with the present immunity doctrine. The difficulty, however, is the instant decision is controlled by a specific state statute. It is the function of this Court to interpret statutes, not rewrite them. If we were dealing with a rule promulgated in decisional law, we would be free to reexamine the reasoning underlying the rule, as well as the public policy considerations. However, we are here confronted with a statute enacted by the legislature, and we cannot and should not interpose our views on public policy for those of the legislature. The wisdom of a statutory provision is not for us to say.

Order affirmed.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The Court today, in the name of fidelity to legislative intent, permits perpetuation of a judicially created immunity. Not only is this Court alone responsible for the existence of spousal immunity in Pennsylvania, but the process leading to adoption of this unfortunate rule is a classic example of blind adherence to precedent. The majority recognizes, as well it must, that social policies which may at one time have justified spousal immunity have ceased to exist, but claims to be bound by the pronouncements of the Legislature. Although the Legislature has addressed the question of spousal immunity, its enactments, as well as current public policy, compel abolition, not retention, of this antiquated doctrine. I cannot join in a decision which refuses to correct this erroneous construction of legislative intent. This Court has acted to abolish other unjust,

———

[6] See *O'Grady v. Potts*, 193 Kan. 644, 396 P. 2d 285 (1964); *Immer v. Risko*, 56 N. J. 482, 267 A. 2d 481 (1970). See generally Restatement of Torts (Second) §895 (Tentative Draft No. 18—Approved 1972).

irrational immunities[1] and should not hesitate at this late date to permit married persons their full status before the law.

The majority's sole reason for denying appellant relief is its interpretation of the Married Womens Acts. To the contrary, Pennsylvania statutes affirmatively mandate that married women be permitted to sue their husbands for tortious conduct. The majority, however, prefers to follow outmoded and mistaken case law and holds that a married woman's tort claim is not her "separate property."

The first Married Womens Act enacted in Pennsylvania was the Act of April 11, 1848.[2] This Act provided that "property of whatever name or kind, which shall accrue to any married women during coverture by will, descent, deed of conveyance or otherwise, shall be owned, used and enjoyed by such married women as her own separate property . . . ."[3]

The next act dealing with married women's rights was the Act of April 11, 1856.[4] Section three of the Act of 1856[5] does not, as the majority asserts, "prohibit . . . a married woman from instituting a legal action against her husband, except in a few specified situations." That section, the only part of the Act pertaining to suits between husband and wife, does not prohibit anything. It merely grants a married woman, inter alia, a right of action to recover separate property when deserted or neglected by her husband. There is

[1] See *Ayala v. Philadelphia Bd. of Pub. Ed.*, 453 Pa. 584, 305 A.2d 877 (1973) (governmental immunity) ; *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971) (parental immunity) ; *Flagiello v. Pennsylvania Hosp.*, 417 Pa. 486, 208 A. 2d 193 (1965) (charitable immunity).

[2] P.L. 536, §§6-11, as amended, 48 P.S. §§64, 116 (1965).

[3] Id. §6, 48 P.S. §64.

[4] P.L. 315, §§1-4, as amended, 48 P.S. §§67, 68, 112 (1965).

[5] Now 48 P.S. §112.

no indication that the Legislature intended to deny married women any other rights of action.

The most telling argument against the majority's conception of legislative intent is found in the language of the Act of June 3, 1887.[6] Section two of that Act provided: "A married woman shall be capable of entering into and rendering herself liable upon any contract relating to any trade or business in which she may engage, or for necessaries, and for the use, enjoyment and improvement of her separate estate, and for suing and being sued, either upon such contracts or for torts done to or committed by her, in all respects as if she were a *feme sole,* and her husband need not be joined with her as plaintiff, or defendant, or be made a party to any action, suit or legal proceeding of any kind brought by or against her in her individual right; and any debt, damages or costs recovered by her in any such action, suit or proceeding shall be her separate property, and any debt, damages or costs recovered against her in any such action, suit or other proceeding shall be payable out of her separate property and not otherwise." This language conclusively establishes that as of June 3, 1887, the Legislature considered that the contract and tort rights of a married woman were her separate property.

It is true that the 1887 Act was repealed by a later statute, the Act of June 8, 1893.[7] However, the exis-

---

[6] P.L. 332, §§1-7.

[7] P.L. 344, §6. Section three of the Act of June 8, 1893, as amended provides: "Hereafter a married woman may sue and be sued civilly in all respects and in any form of action and with the same effect and results and consequences as an unmarried person, but she may not sue her husband, except in a proceeding for divorce, or in a proceeding to protect or recover her separate property whensoever he may have deserted or separated himself from her without sufficient cause, or may have neglected or refused to support her, nor may he sue her, except in a proceeding for divorce,

tence of the 1887 Act demonstrates that a married woman's unliquidated tort claim is her "separate property." No subsequent statute declares otherwise. The Act of 1893 merely provided that a woman could "not sue her husband, except in a proceeding to protect and recover her separate property . . . ."[8]

If a married woman is "capable of . . . suing and being sued . . . as if she were a *feme sole*" and if "any debt, damages or costs recovered by her . . . shall be her separate property," then this section admits of a single interpretation. Nowhere does the 1893 Act state that a chose in action, such as an unliquidated tort claim, may not be a married woman's "separate property." Nowhere does it repeal the 1848 Act's declaration that "property of whatever name or kind" may be a married woman's "separate property."

This brief recital of the statutory history clearly illustrates the majority's error in following *Meisel v. Lit-*

---

or in a proceeding to protect or recover his separate property whensoever she may have deserted him or separated herself from him without sufficient cause, nor may she be arrested or imprisoned for her torts."

The Act of March 27, 1913, P. L. 14, §3, 48 P.S. §111 (1965), deleted from this section the words "whensoever he may have deserted or separated himself from her without sufficient cause, or may have neglected or refused to support her" and "whensoever she may have deserted him or separated herself from him without sufficient cause." Thus the 1913 amendment to the Act of 1893 permitted married women during coverture to sue their husbands to protect their "separate property." The Act of 1887 had earlier established a married woman's right to sue her husband to protect her "separate property"; the 1913 Act then permitted her to sue during marriage.

[8] Id. §3, as amended, Act of March 27, 1913, P. L. 14, 48 P.S. §111 (1965). Furthermore, this Court in 1900 recognized that "[t]he right of the wife . . . being for a tort done to her, was her separate property by the words of the Act of June 3, 1887 . . . ." *Walker v. Philadelphia*, 195 Pa. 168, 173, 45 A. 657 (1900). See *Meisel v. Little*, 407 Pa. 546, 558, 180 A.2d 772, 778 (1962) (MUSMANNO, J., dissenting).

*tle*, 407 Pa. 546, 180 A.2d 772 (1962). The majority, as did the *Meisel* Court, states *ex cathedra* that section three of the Act of 1893[9] codifies the common law of interspousal immunity.[10] How could the Legislature

---

[9] 48 P.S. §111 (1965).

[10] *Meisel v. Little*, 407 Pa. 546, 180 A.2d 772 (1962), involved an antenuptial tort. In refusing to reverse a judgment on the pleadings for defendant, the *Meisel* majority, after quoting 48 P.S. §111, stated, "Unliquidated claims of damage are not 'property' within the meaning of the Act. See, Miller v. Miller, 44 Pa. 170 (1863); Sensenig v. Penna. R.R. Co., 229 Pa. 168 (1910); Manganiello v. Lewis, 122 Pa. Superior Ct. 435 (1936); Chromy v. Chromy, 10 Pa. D. & C. 2d 791 (1957); Gulian v. Gilian, 7 Pa. D. & C. 2d 247 (1954); Davis v. Davis, 23 Pa. D. & C. 2d 52 (1960); 41 C.J.S. Husband and Wife, §392(b); 13 Standard Pa. Practice §21." An examination of the authorities cited in support of this proposition reveals compound error. 407 Pa. at 549, 180 A. 2d at 773.

*Miller v. Miller*, 44 Pa. 170 (1863) was a suit by a wife against her husband for waste and destruction of real estate conveyed to him by an antenuptial contract. The Court of Common Pleas of Chester County held an unliquidated claim for damages not "separate property" within the Act of 1856. This Court in a four-line opinion affirmed on the basis of the trial court's opinion. The trial court had cited no authority for its holding that unliquidated damages were not "separate property." Even assuming that *Miller* was persuasive authority in 1863, it predated by almost thirty years the Acts of 1887 and 1893 which declared a married woman's tort claims her separate property. See *Ritter v. Ritter*, 31 Pa. 396 (1858).

Some cases do not even present the question whether a claim is liquidated. A claim for damages due to discrimination in railroad freight rates was held not assignable in *Sensenig v. Pennsylvania R.R.*, 229 Pa. 168, 78 A. 91 (1910). No question of interspousal immunity or "separate property was there put in issue or decided. Accord, *Manganiello v. Lewis*, 122 Pa. Superior Ct. 435, 186 A. 218 (1936). The *Meisel* Court's conclusion that an interest's nonassignability indicates that that interest is not "property" is also somewhat puzzling. The English Court of the King's Bench has addressed this very argument.

"The existence of things in action as a form of personal property was established long before the right to assign any kind of thing in action was admitted, and it would be strange indeed if it were now the law that the crucial test of whether or not a right

have impliedly codified the common law in 1893 when
it had, only six years earlier, abrogated the common-

was a thing in action was whether or not it was capable of assign-
ment." *Curtis v. Wilcox*, 2 K.B. 474, 481, 2 All Eng. 573, 575 (1948).

*Chromy v. Chromy*, 10 Pa. D. & C.2d 791 (C.P. Fayette County
1957), *Gulian v. Gulian*, 7 Pa. D. & C.2d 247 (C.P. Montgomery
County 1954), and *Davis v. Davis*, 23 Pa. D. & C.2d 52 (C.P. Alle-
gheny County 1960), while directly on point, blindly follow *Miller v.
Miller*, supra. Surely repetition of an error does not make it good
law.

The *Meisel* Court continued: "[M]oreover, this Court has said
repeatedly over a long period of years that the common law pro-
hibition of litigation between spouses has not been abrogated by
the Acts of 1893 or 1913, supra. See, Koontz v. Messer and Quaker
State Oil Refining Company, 320 Pa. 487, 181 A. 792 (1935) ; Kac-
zorowski v. Kalkosinski, Admr., 321 Pa. 438, 184 A. 663 (1936) ;
Parks v. Parks, 390 Pa. 287, 135 A.2d 65 (1957) ; Johnson v. Peo-
ples First National Bank and Trust Co., 394 Pa. 116, 145 A.2d 716
(1958)," 407 Pa. at 549, 180 A.2d at 773-74.

*Koontz v. Messer*, 320 Pa. 487, 492-94, 181 A. 792, 794-95
(1935), assumed, in answering one of defendant's arguments, that
a husband was immune from a wife's suit for personal injury.
There Mrs. Koontz was injured while riding with her husband in a
company car. The husband's employer, the Court held, could not
avoid liability by arguing that the wife's action was against her
husband and only derivatively against the employer. There was no
citation of authority for, or discussion of, interspousal immunity.
See *Daly v. Buterbaugh*, 416 Pa. 523, 540, 207 A.2d 412, 420 (1964)
(ROBERTS, J., dissenting).

A wrongful death action was allowed in *Kaczorowski v. Kalko-
sinski*, 321 Pa. 438, 184 A. 663 (1936). Following *Koontz*, supra,
the Court reversed dismissal of a father's claim against his son-in-
law's estate for loss of his daughter's support. Only in dictum and
without citation of any statute or any case other than *Koontz* did
the Court discuss interspousal immunity. The discussion, moreover,
was only intended to show that the common-law rationale for such
immunity was inapplicable to a suit by a father-in-law against his
son-in-law's estate. Id. at 442-45, 184 A. at 665-66.

*Parks v. Parks*, 390 Pa. 287, 135 A.2d 65 (1957), expressed the
then current law of parent-child tort immunity. The doctrine that
a child may not sue his parent in tort was abolished, and *Parks*
impliedly overruled in *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351

law rule which gave a husband title to all his wife's property—the very rule upon which the common law based the doctrine of interspousal immunity? The Legislature in 1887 answered the question now before us when it provided that a married woman's tort claims and recoveries are her separate property. No legislative enactment has since manifested a contrary intent.

The majority's assertion that equating "every species and description of property"[11] with "separate property" renders the Act of 1893 meaningless is likewise ill-founded. "Separate property" is merely a shorthand description of that which is held individually. Property not held by an individual, that is, a tenancy by the entireties, or a joint tenancy, may not be the subject

(1971). In any event, only incidentally did *Parks* mention husband-wife immunity and the only authorities cited for this dictum were *Koontz*, and cases following it.

The final authority cited in *Meisel* to substantiate the continuing existence of common-law spousal immunity is *Johnson v. Peoples First Nat'l Bank & Trust Co.*, 394 Pa. 116, 145 A.2d 716 (1958). There this Court reversed dismissal of defendant's preliminary objections. Plaintiff-wife's claim against her deceased husband's personal representative was for personal injuries sustained during coverture as a result of the husband's negligent operation of a motor vehicle. Mr. Justice, now Mr. Chief Justice JONES, there noted that "[a]n examination of our decisions clearly indicates that *'the personal immunity which protects [the husband or wife] is based simply upon the policy of preserved domestic peace and felicity'*: Koontz, . . . ." 394 Pa. at 119, 145 A.2d at 717 (emphasis in original). Since any need to preserve "domestic peace and felicity" ceased with the husband's death, the wife was permitted to present her claim.

If, as *Johnson* and *Koontz* maintain, spousal immunity is based "simply upon . . . policy," the majority's conclusion that it is precluded by statute from reexamining that policy is puzzling. As I believe the policy basis of the rule an anachronism, I would, at the very least as to antenuptial torts, abrogate the rule of interspousal immunity.

11 Act of April 11, 1848, P.L. 536, §6, 48 P.S. §64 (1965). See text following note 1, supra.

of a suit between husband wife.[12]   However, the Legislature has provided that married women may sue their husbands to protect any property ("every species and description of property") held separately ("separate property").[13]

If one refuses to accept the evidence of legislative abrogation of common-law spousal immunity, even the most grudging analysis of the Married Women's Acts shows that the Legislature has not codified the common law.   Because this is the case, this Court, as a common-law court, is free to modify or abolish common-law spousal immunity.

Here, we need revise only the construction of the term "separate property" adopted by earlier members of this Court.   Refusal to carry out this integral component of our judicial duty—re-examination of outmoded precedent in the light of current public policy—deprives Mrs. Apanavage of her right to be compensated for negligently-inflicted bodily injuries.

Any doubt as to the wisdom of abolishing spousal immunity, this vestige of medieval England, is quickly dispelled by examining the archaic policies undergirding the doctrine and their treatment by the courts of this and other states.[14]   Retention of interspousal im-

---

[12] *Stemniski v. Stemniski*, 403 Pa. 38, 42, 169 A.2d 51, 53 (1961) ; *Brandt v. Hershey*, 198 Pa. Superior Ct. 539, 182 A.2d 219 (1962).

[13] Other state supreme courts have not hesitated to hold a married woman's unliquidated tort claim "separate property." E.g., *O'Grady v. Potts*, 193 Kan. 644, 396 P.2d 285 (1964) ; *Berry v. Harmon*, 329 S.W.2d 784 (Mo. 1959).

[14] See W. Prosser, Handbook of the Law of Torts §122 (4th ed. 1971). Certainly, our conception of the effect of abolition of interspousal immunity has changed considerably since 1858 when this Court, to prevent marital discord, refused to allow a wife to sue her husband for a debt stating: "Nothing could so complete that severance and degradation, as to throw open litigation to the parties. The maddest advocate for woman's rights, and for the abolition on earth of all divine institutions, could wish for no more de-

munity for premarital torts may not be supported by reference to the common-law "fictional unity of husband and wife." *Johnson v. Peoples First National Bank & Trust Co.*, 394 Pa. 116, 120, 145 A.2d 716, 718 (1958). This fictitious concept was largely dissipated by the widespread enactment of "Married Women's Acts" in the mid-nineteenth century. *Immer v. Risko*, 56 N.J. 482, 267 A.2d 481 (1970). See also *Freehe v. Freehe*, 81 Wash. 2d 183, 500 P.2d 771 (1972) ; W. Prosser, Handbook of the Law of Torts §122 (4th ed. 1971).

Likewise, fear of collusive claims between husband and wife does not warrant retention of spousal immunity. Courts are daily required to separate the artificial from the genuine.

"In the last analysis it is much to be preferred that we depend upon the efficacy of the judicial process to ferret out the meritorious from the fraudulent rather than using a broad broom to sweep away a class of claims, a number of which are admittedly meritorious." *Falco v. Pados*, 444 Pa. 372, 381, 282 A.2d 351, 356 (1971).

Finally, the notion that liability will provoke family disharmony is a highly unrealistic basis for preserving

---

cisive blow from the courts than this. The flames which litigation would kindle on the domestic hearth would consume in an instant the conjugal bond, and bring on a new era indeed—an era of universal discord, of unchastity, of bastardy, of dissoluteness, of violence, cruelty, and murders." *Ritter v. Ritter*, 31 Pa. 396, 397 (1858).

Furthermore, as the Supreme Court of North Carolina observed in abolishing interspousal immunity, the justification of preservation of family harmony is somewhat anomalous.

"Whether a man has laid open his wife's head with a bludgeon, put out her eye, broken her arm, or poisoned her body, he is no longer exempt from liability to her on the ground that he vowed at the altar to 'love, cherish, and protect' her. We have progressed that far in civilization and justice." *Bogen v. Bogen*, 219 N.C. 51, 53, 12 S.E.2d 649, 651 (1941).

interspousal immunity.[15] What Mr. Justice EAGEN said in *Falco v. Pados,* with regard to arental immunity to equally applicable here.

"The speculative theory of family disruption upon which the doctrine of . . . immunity is largely based has been criticized and rejected by legal scholars without exception. As they point out, it is the injury itself which is the disruptive act, and with today's skyrocketing health costs, one which often works the greatest hardship on the family unit. In a time of almost universal liability insurance, such unexpected hardship or ruin is needlessly inflicted by the immunity doctrine." Id. at 379-80, 282 A.2d at 355.

The family disharmony theory is especially speculative since notwithstanding appellee's negligent conduct, appellant and appellee were subsequently married. Obviously, the existence of a claim for negligence was not a deterrent to their marriage. Nor was it a threat to marital harmony and family unity.

"[T]he only time one spouse will seek to secure the benefits of a judgment against the other in a trespass case will be in those instances where, as here, the husband has provided a fund for the satisfaction of such judgments by contract or liability insurance. This presents a situation which is especially and particularly free from concern that efforts to satisfy the judgment entail possibilities of a marital discord. Undoubtedly, a wife is one of the persons a husband most desires to protect by his purchase of insurance, yet this protection is precisely what the 'majority' needlessly precludes." *Daly v. Buterbaugh,* 416 Pa. 523, 543, 207 A.2d 412, 421 (1964) (ROBERTS, J., dissenting).

---

[15] See *Immer v. Risko,* 56 N.J. 482, 488-490, 267 A.2d 481, 484-85 (1970) ; 34 Am. Trial Lawyers J. 65-66 (1972). See also Jayne, Interspousal Immunity : Revolution and Counterrevolution in American Tort Conflicts, 40 S. Cal. L. Rev. 307, 317 (1967) ; W. Prosser, Handbook of the Law of Torts §123 (4th ed. 1971).

Today's tendency is to view spousal immunity, as well as other immunities, "with a considerable degree of disapproval."[16] Presently, twenty-two states have abrogated tort immunity between husband and wife.[17] It is time this Court recognized that the policies that motivated the English common-law courts to bar interspousal suits have long since been discredited. Indeed, the English Court of the King's Bench has held an unliquidated tort claim arising from an antenuptial tort to be "separate property." *Curtis v. Wilcox*, 2 K.B. 474, 2 All Eng. 573 (1948). We too have the power to abolish this outmoded doctrine; we ought not shirk our responsibility through obsequious deference to a mistaken conception of the Legislature's intent.

Finally, it must be noted that the majority's refusal to grant Mrs. Apanavage her day in court violates Article I, Section 11 of the Pennsylvania Constitution. Our Declaration of Rights mandates that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law[18] . . . ." The majority today asserts that this Court may not vindicate appellant's rights because the Legislature has, by the Act of

---

[16] Restatement (Second) of Torts §895A at 60 (Tentative Draft No. 18, 1972) (Approved at the forty-ninth annual meeting of the American Law Institute). "Fortunately, [spousal] immunity is now also on the wane and appears in full retreat." 32 Am. Trial Lawyers J. 282 (1968) (see cases cited at 283-84).

[17] See, e.g., *Immer v. Risko*, 56 N.J. 482, 267 A.2d 481 (1970) (auto accidents only). For a compilation of the jurisdictions which have completely abrogated interspousal immunity and those which have abrogated it for premarital torts see Restatement, Second, of Torts §895G at 72-78 (Tentative Draft No. 18, 1972) (Approved at the forty-ninth annual meeting of the American Law Institute). See also W. Prosser, Handbook of the Law of Torts §122 (4th ed. 1971).

[18] Obviously, "man" as used in our Constitution must be read as "person." See Pa. Const. Art. I, §28 (adopted May 18, 1971).

1893, amended Article I, Section 11, to read: "Every person, except if she be a married woman suing her husband for personal injury . . shall have remedy by due course of law."

Attribution of this intent to the Legislature assumes the unconstitutionality of the Act of 1893. It is our duty, when possible, to interpret statutes in such a way that they will be constitutional. We may carry out this responsibility here by, as the Legislature in fact intended, construing "separate property" to include a married woman's tort claims.

Despite current public policy, the Legislature's declared intent, and the mandate of our Constitution, the majority refuses to afford Mrs. Apanavage her day in court. Even if the majority were not inclined to abolish interspousal immunity generally, it should take at least the first step and not apply this antiquated doctrine to the antenuptial tort in this case. There is no rational reason why this woman should be denied the right due every person—to have remedy for injury by due course of law.

I dissent.

Mr. Justice Nix joins in this dissenting opinion.

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. The statute in this case which deprives a married woman of her right to file a legal claim is unconstitutional. The legislature *cannot grant immunity* from suit to any person who has wronged another. There is no authority in the Pennsylvania Constitution which permits the legislature to deprive anyone of the opportunity to redress a wrong. In fact, the Declaration of Rights (Pa. Const. art. I, §11) specifically provides that ". . . every man for an injury done him in his lands, conditions, person or reputation shall have remedy by due course of law. . . ." *See Brown v. Common-*

*wealth,* 453 Pa. 566, 305 A. 2d 868 (1973) (MANDERINO, J., dissenting).

The above section of the Declaration of Rights, in the context of the entire Declaration, obviously uses the word *man* as a reference to *human beings,* and not as a reference to the *male* of the human species. The full protections of the Declaration of Rights are available to *females* as well as *males.* A legislative enactment which provides *any defendant* with immunity from suit is unconstitutional.