No. 49,436

PEGGY MILES and DAWN MILES, *Appellants and Cross-Appellees,* v. CHARLES W. WEST, *Appellee and Cross-Appellant,* v. LARRY MILES, *Third-Party Defendant and Cross-Appellee.*

(580 P.2d 876)

Opinion filed June 10, 1978.

*Russell E. Grant,* of Mulvane, argued the cause and *Mikel Stout,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, was with him on the briefs for the appellants and cross-appellees, Peggy Miles and Dawn Miles.

*Orlin Wagner,* of Wichita, and *Robin L. Wick,* of Turner and Boisseau, Chartered, of Wichita, argued the cause and were on the brief for the appellee and cross-appellant, Charles W. West.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause for the third-party defendant and cross-appellee, Larry Miles.

*Gerald W. Scott,* of Wichita, was on the brief of *amicus curiae* for the Kansas Trial Lawyers Association.

The opinion of the court was delivered by

OWSLEY, J.: This is a comparative negligence action for damages which resulted from a collision between a car owned by Larry and Peggy Miles, and one owned by Charles West.

On January 5, 1975, plaintiff Peggy Miles and her husband, Larry Miles, decided to go shopping. They loaded their two children, Dawn and Michael, into their 1971 Gremlin and left

home. Their car proceeded east on West Central Street in Wichita. The children, sitting behind them in the back seat of the car, started arguing over where each would sit. Their mother turned around to discipline them, but didn't have much success. Larry apparently felt it was necessary to assist his wife and slowed down in order to make a left turn into a driveway on the north side of Central. As he made the turn he was hit by defendant Charles West, who was proceeding west on Central. As a result of the accident, Larry, Peggy, and Dawn Miles, and Charles West were injured.

Peggy and Dawn Miles filed suit against Charles West. Subsequently, West filed suit against Larry Miles. The two cases were consolidated for trial. In addition, West joined Larry Miles as a third-party defendant in the suit against him by Peggy and Dawn Miles. At trial the jury found Larry Miles 40% at fault and Charles West 60% at fault. The jury also found Peggy Miles suffered $60,000 damage, Dawn Miles suffered $10,000 damage, Larry Miles suffered $5,000 damage, and West suffered $25,000 damage. Based upon the jury findings the trial court reduced Peggy and Dawn Miles' damages by 40% because of Larry Miles' negligence, and entered judgment against West for $36,000 and $6,000 respectively. Larry Miles' own negligence reduced his judgment against West to $3,000. Because West was 60% negligent he was barred from recovery.

Plaintiffs Peggy and Dawn Miles appeal, and defendant West cross-appeals.

Plaintiffs contend the trial court erroneously ignored the principle of joint and several liability in entering judgment for only 60% of the total damages. They also suggest the judgment violates the doctrines of interspousal tort immunity and intrafamily immunity. They further argue their recovery cannot be diminished because of Larry Miles' negligence because he is not a party against whom recovery is allowed, and therefore should not have been joined as a party under subsection (c) of K.S.A. 60-258a, which states:

"On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury or property damage, any other person whose causal negligence is claimed to have contributed to such death, personal injury or property damage shall be joined as an additional party to the action."

All these contentions were answered adversely to plaintiffs in

*Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978). There we held that under the provisions of 60-258a the concept of joint and several liability between tort-feasors no longer exists in comparative negligence actions. Individual liability of each defendant now rests upon proportionate fault. Under 60-258a all tort-feasors may be made parties to a lawsuit and even if they are not made parties their percentage of fault may be determined. With the rendition of individual judgments the risk of an immune or judgment-proof tort-feasor falls upon the plaintiff. The goal of determining fault of all the parties responsible for causing or contributing to the collision or occurrence is to allow each party to be joined in the action, even if he is immune or judgment-proof.

The foregoing effectively disposes of plaintiffs' arguments on interspousal tort immunity and intrafamily immunity as they apply to this case. Recognizing the existence of interspousal tort immunity (*Sink v. Sink,* 172 Kan. 217, 239 P.2d 933 [1952]), and assuming, but not admitting, the existence of intrafamily immunity in this state, plaintiffs' arguments have no merit. The trial court did not enter judgments against Larry Miles in favor of plaintiffs, in violation of the doctrines, but instead diminished plaintiffs' awards against defendant West. That course of action was correct.

The comparative negligence statute was intended to prevent harsh results which could occur in lawsuits similar to the case at bar. An example of what could happen if joint and several liability existed under comparative negligence in a case involving spouses is *Kampman v. Dunham,* ____ Colo. ____ , 560 P.2d 91 (1977). There a husband was operating a motorcycle on which his wife was a passenger. He collided with defendant's automobile. In the wife's lawsuit against the automobile owner a jury found the wife 0% negligent, her husband 99% negligent, and the automobile owner 1% negligent. The trial court limited the wife's recovery against the automobile owner to 1% of her damages. The Colorado Court of Appeals reversed and allowed her to recover 100% of her damages from a party only 1% negligent. The Colorado Supreme Court affirmed, holding that joint and several liability had not been abolished by the adoption of the Colorado comparative negligence statute. We decline to adopt such a construction of our comparative negligence act.

Plaintiffs argue the statute should not apply because they were found to be without fault. They argue that applying the statute to diminish their award when they are not at fault is unfair to them. In *Brown v. Keill,* supra, we held the statute applies in any case where the comparative negligence of the parties is at issue. The fact plaintiffs are without fault does not prevent the application of the comparative negligence act when the comparative negligence of two or more parties must be determined. The ill fortune of being injured by an immune or judgment-proof person now falls upon plaintiffs rather than upon the other defendants, as was the practice in this state prior to the enactment of 60-258a. The risk of such ill fortune is the price plaintiffs must pay for being relieved of the burden formerly placed upon them by the complete bar to recovery based on contributory negligence.

Defendant's first issue on cross-appeal concerns the testimony of two lay witnesses, Arcille Roy Tinker and Estil Dean Prior. Both individuals were in an automobile which was traveling west on Central when they were passed by defendant. They observed the Miles car as it attempted to make a left turn and was struck by West's car. Both witnesses were asked whether the Gremlin making its left turn constituted a hazard to them as they approached the car coming toward them. Defendant objected to the question, but was overruled. Both witnesses stated they did not consider the presence of the Gremlin a hazard to them as they traveled down Central.

According to defendant, the opinion that the Gremlin making a left turn was not a hazard constitutes an impermissible comment on the ultimate issue in a negligence case, citing *Massoni v. State Highway Commission,* 214 Kan. 844, 522 P.2d 973 (1974). That case and other similar cases forbid a witness to express an opinion on the ultimate issue in a negligence action. The opinions offered by the two lay witnesses went to the question of whether the Miles car was a hazard to them. Their opinions had nothing to do with the cause of the collision, which is the subject of this lawsuit, nor did they involve the ultimate legal issue.

Defendant next contends it was reversible error for the trial court to allow into evidence his drinking alcoholic beverages and drinking while driving on prior occasions. Plaintiffs introduced in their case-in-chief a portion of a deposition of defendant's former girlfriend, who was deceased before the time of trial, to

establish defendant had been drinking just before the accident. Her deposition stated that defendant came to her house on the afternoon of the accident and she could tell he had been drinking because his face was flushed. While defendant was there they got into an argument over his drinking. Defendant left her house, got into his car and drove away, kicking up gravel as the car pulled out of the driveway. A few minutes later she received a telephone call informing her of the accident.

Defendant denied he had been drinking on the day of the accident. He argued the "flushed" look his former girlfriend observed on the day of the accident was not due to drinking. He further stated he had never driven a car with a beer can in his hand.

In rebuttal, plaintiffs introduced the remainder of the deposition. In it, defendant's girlfriend testified she knew from past experience that defendant's face always became flushed when he drank. She further testified that she had been with him on several occasions when he drove while drinking and holding a beer can in his hand.

Defendant argues the admission of such evidence violates K.S.A. 60-447, 60-448 and 60-422 (*d*). While normally he would be correct, the facts of this case require a different disposition of the issue. The question of defendant's intoxication at the time of the accident was a proper issue to present to the jury if relevant evidence of such a condition could be produced. (See, *Shawnee Township Fire District v. Morgan*, 221 Kan. 271, 559 P.2d 1141 [1977].) Plaintiffs attempted to produce such evidence through the testimony of defendant's former girlfriend. Her opinion that he had been drinking was based upon her observation that his face was flushed and he was belligerent. Defendant attacked her conclusion as being unfounded. At that point it was proper to show she had previous contact with defendant when he had been drinking and knew what he looked like and how he acted when he drank. Further, defendant volunteered in his direct testimony that he had never held a beer can in his hand while driving a vehicle. The deposition was used in rebuttal to impeach defendant on that statement. Under the circumstances the evidence of defendant's past drinking was not improperly admitted.

Defendant next contends the trial court erred in failing to give a proximate cause instruction on the issue of intoxication. We find

no error. The trial court instructed that driving while intoxicated was one of the acts of negligence alleged by plaintiffs. The court further instructed that the plaintiffs had the burden to prove this claim. Instruction 9A, copied from PIK (Civil) 8.84, stated that intoxication of a driver may be taken into consideration in determining whether a driver exercised ordinary care. Instruction 12 stated that the jury was required to determine defendant's negligence and fault, if any. The instruction stated:

"A party is at fault when he is negligent and his negligence caused or contributed to the event which brought about the injury or damages for which claim is made."

An entire reading of the instructions makes it clear that the intoxication of defendant had to cause or contribute to the accident before the jury could assess liability on that basis.

As his third point, defendant argues the trial court committed reversible error in failing to submit the issue of Peggy Miles' negligence to the jury. Defendant submits that she had a duty as a passenger to be on the lookout for other cars and failed to do so. In support of this contention defendant cites *Sander v. Union Pacific Rld. Co.,* 205 Kan. 592, 470 P.2d 748 (1970). We find that case inapplicable as it involved the duty of a passenger to be on the lookout for trains at railroad crossings. In *Smith v. Union Pacific Railroad Co.,* 222 Kan. 303, 307, 564 P.2d 514 (1977), we pointed out that this rule does not apply to a passenger of an automobile involved in a collision between two cars on a street, and further held that the failure of a passenger to keep a lookout for trains at crossings did not constitute negligence as a matter of law, overruling cases such as *Sander.*

A passenger in an automobile is entitled to trust the vigilance or skill of the driver unless he is aware of the existence of a particular danger or knows from past experience or in some other manner that a driver is not vigilant or skillful. (*Smith v. Union Pacific Railroad Co.,* supra; *McGlothlin v. Wiles,* 207 Kan. 718, 487 P.2d 533 [1971].) Here there was no evidence Peggy Miles knew of a particular danger or that her husband was not normally a careful driver. Instead, the evidence revealed she was busy disciplining her children and had her eyes focused toward the back of the car when the accident occurred. The trial court was correct in refusing to submit the issue to the jury.

Finally, defendant alleges the awards of damage to the Miles

family were excessive. We do not agree. The definition of an excessive verdict depends upon the facts and circumstances of each case. (*Kirk v. Beachner Construction Co., Inc.,* 214 Kan. 733, 522 P.2d 176 [1974].) Here Peggy Miles suffered a broken neck and was hospitalized for a month. Her hospital bills came to more than $7,000. After her release from the hospital she was required to wear halo traction for several months and later a neck brace. She still suffered back and neck problems affecting her ability to bend, stoop and lift objects. Dawn Miles was knocked unconscious by the accident. She suffered facial injuries and injuries to an arm. She was hospitalized for a week and had medical bills totaling nearly $1,300. After her release from the hospital she suffered from lingering effects of the accident and did not have full use of her arm or facial muscles for some time. Larry Miles suffered facial cuts, and an injured nose, shoulder, hand, and knee. As a result of the accident he lost a week's work. His medical bills were $158.60. Because of the knee injury he was unable to crawl on his knees. His shoulder injury weakened his lifting capabilities. He was an air conditioner installer and the injury affected his work which required him to lift heavy weights and crawl under houses to install air conditioning equipment. Under all the facts and circumstances we cannot say the awards were so excessive as to shock the conscience of this court.

The judgment of the trial court is affirmed in all respects.