(608 P.2d 1028)

No. 50,520

EDMOND COOK, *Appellant*, v. WILLIAM H. DOTY, *Appellee.*

Petition for review denied June 20, 1980.

Opinion filed March 28, 1980.

*Marvin E. Rainey,* of Rainey & Wiglesworth, of Overland Park, for the appellant.

*H. Wayne Powers,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, for the appellee.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

FOTH, C.J.: This is an action for damages arising out of an automobile collision in which the jury fixed plaintiff's causal negligence at 80%, defendant's at 20%. Plaintiff appeals, claiming error in the trial court's refusal to instruct the jury as to the effect of its allocation of fault on the award of damages.

The case was tried from May 22 to May 25, 1978. At that time PIK Civ. 2d recommended an instruction, 20.01, which would inform the jury of the legal consequences of its answers in a comparative negligence case. However, no appellate decision in this state had endorsed the instruction, and it remained at that time but a recommendation of the Judicial Council committee which composed it. Opposing the views of the distinguished members of that committee were such cases as *Hubbard v. Havlik,* 213 Kan. 594, 518 P.2d 352 (1974), and *Rohr v. Henderson,* 207 Kan. 123, 483 P.2d 1089 (1971). Those cases, in contexts other than comparative negligence, suggest that special questions should be posed to ascertain facts without regard to legal consequences, and that informing the jury of those consequences tends to corrupt the fact finding process and taint the result. The federal trial court in this state had predicted that our Supreme Court would reach the same result in comparative negligence cases. *Benton v. Union Pac. R. Co.,* 430 F. Supp. 1380 (D. Kan. 1977).

Some two months after this case was tried the Supreme Court

settled the matter, at least for the time being, in *Thomas v. Board of Trustees of Salem Township,* 224 Kan. 539, 582 P.2d 271 (July 21, 1978). The Court there reviewed the ongoing debate on the issue among jurists and commentators, concluded it was a policy decision, and came down on the side of giving the PIK instruction as "the better rule." The actual holding was:

"It is not error in a comparative negligence action under K.S.A. 60-258a for the trial court to inform the jury as to the legal effect of its special verdicts in the form of a general instruction advising the jury of the theory and legal effect of comparative negligence." 224 Kan. 539, Syl. ¶ 2.

There was thus ample justification for the trial court's decision in the state of the law at the time the decision was made, and even *Thomas* does not say it was error *not* to give the instruction. Nevertheless we read *Thomas* as promulgating a rule to be followed by our trial courts; a trial court refusing to give the substance of the PIK instruction in the face of *Thomas* would, in our opinion, face a sure reversal.

The remaining question, which was not touched upon in *Thomas,* is whether the newly announced rule is to be applied retroactively to a case like this one which had gone to judgment before the announcement. We conclude it should not.

The guiding principles governing the prospective-retroactive effect of an appellate court's decision have become well established. They were recently summarized in *Troughton v. Troughton,* 3 Kan. App. 2d 395, 396-7, 595 P.2d 1141 (1979):

"It has long been recognized that an appellate court has the power to give a decision prospective application without offending constitutional principles. *Gt. Northern Ry. v. Sunburst Co.,* 287 U.S. 358, 77 L.Ed. 360, 53 S.Ct. 145 (1932). And see *Carroll v. Kittle,* 203 Kan. 841, 851-2, 457 P.2d 21 (1969); *Vaughn v. Murray,* 214 Kan. 456, 465, 521 P.2d 262 (1974). The options available to a court making a prospective-retroactive choice have been categorized by our court as four:

" '(1) Purely prospective application where the law declared will not even apply to the parties to the overruling case; (See cases collected 10 A.L.R.3d, § 7, p. 1393.) (2) Limited retroactive effect where the law declared will govern the rights of the parties to the overruling case but in all other cases will be applied prospectively; (See *Carroll v. Kittle,* 203 Kan. 841, Syl. ¶ 10, 457 P.2d 21; and cases collected in 10 A.L.R.3d, § 8[b], p. 1399.) (3) General retroactive effect governing the rights of the parties to the overruling case and to all pending and future cases unless further litigation is barred by statutes of limitation or jurisdictional rules of appellate procedure; (See cases collected in 10 A.L.R.3d, § 8[e], pp. 1407-1412.) and (4) Retroactive effect governing the rights of the parties to the overruling case and to other cases pending when the overruling case was decided and all future cases, but limited so the new law will not govern the rights of parties to cases terminated

by a judgment or verdict before the overruling decision was announced. (See *Hanes v. State,* 196 Kan. 404, 411 P.2d 643, and cases collected in 10 A.L.R.3d, § 8[c, d], pp. 1401-1407.)' *Vaughn v. Murray,* 214 Kan. at 465-66.

. . . .

"In *Vaughn v. Murray* the Court also recognized five factors commonly relied on by courts in determining the retroactivity question:

" '(1) Justifiable reliance on the earlier law; (2) The nature and purpose of the overruling decision; (3) *Res judicata;* (4) Vested rights, if any, which may have accrued by reason of the earlier law; and (5) The effect retroactive application may have on the administration of justice in the courts.' " 214 Kan. at 464.

In applying the five factors of *Vaughn v. Murray* to the case at bar, it appears to us that (1) the trial court reasonably relied on earlier law clearly indicating that the jury should not be informed of the legal effect of its special verdict. (2) The purpose of the *Thomas* decision was to make a new policy determination as to the appropriate rule to be followed in the instructing of Kansas juries in comparative negligence cases. It concluded that the PIK approach was the "better rule," but warned that if experience shows that the choice was wrong "we will not hesitate to change the rule." 224 Kan. at 552. The rule is thus not immutable, and does not have the quality of a constitutional command. (3) Prospective application would leave intact judgments entered prior to the announcement of the *Thomas* decision, promoting the doctrine of res judicata. (4) There are no vested rights which have accrued under the earlier law.

(5) As for the effect retroactive application of *Thomas* would have on the administration of justice, it is appropriate to evaluate the policy considerations discussed in *Vaughn v. Murray.* The Court there considered the retroactive effect which should be given to its decision in *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 (1974), declaring unconstitutional the Kansas guest statute:

"We have considered what might be the effect of giving the law declared in the overruling case, *Henry v. Bauder,* [213 Kan. 751, 518 P.2d 362 (1974)], general retroactive effect to all pending and future cases without limitation. *However, we believe some limitation is necessary because of benefits which flow from giving finality to cases fairly heard and determined.* There is trauma and expense to litigants in every trial. The trauma and expense is doubled by requiring a second trial. The outcome of a second trial is never certain. 'Guest statute' cases are generally in the liability insurance field and are defended on behalf of insurance companies. Policy holders are reluctant to submit to a second trial. *Especially is this true when their cases were fully presented and terminated by the courts under the law in effect when the cases were tried.* Trial courts with burdensome dockets are hesitant to undertake a second trial.

"In addition the present overruling decision could not have been anticipated and the change in the law came as a surprise to former litigants, lawyers and judges. Unsuccessful litigants looking back can argue they were prejudiced. The Code of Civil Procedure (K.S.A. 60-260) places wide discretion in the hands of the trial courts to set aside judgments upon 'any . . . reason justifying relief from the operation of the judgment.' The application of this statute could result in confusion. We should not leave this matter to varied future interpretations by trial courts. The uncertainty would surely result in confusion and fruitless relitigation in some cases. *We desire to give finality to those cases which have been presented to and determined by the trial courts of this state and the cases have terminated in judgments or verdicts without reversible error under the law then existing.*" 214 Kan. at 466. Emphasis added.

The result in *Vaughn* was that the *Henry* decision was given limited retroactive effect—it applied to all similar cases pending when the opinion was filed and to cases filed thereafter regardless of when the causes of action accrued, but it did not apply where a judgment or verdict had been entered prior to that decision and the same was free of reversible error under the law then existing. Only where there was other error, or the constitutional issue had been raised at trial in a case then pending on appeal, would a prior judgment or verdict be affected.

A somewhat similar result would appear to be appropriate in the instant case, based on the policy considerations recognized in *Vaughn.* The *Thomas* decision can be given application to all similar cases pending and untried when it was decided on July 21, 1978, and to all cases filed thereafter regardless of when the causes of action accrued. However, in cases where a judgment or verdict has been entered in a district court prior to July 21, 1978, and it is otherwise free of reversible error, we hold that the judgment should stand regardless of whether the PIK instruction issue was raised at trial. We make this distinction from the *Vaughn* result because, unlike the guest statute decision, *Thomas* does not affect a substantive right of the parties. Instead, it represents only a choice of procedures on the basis of desirability, over which there is room for a substantial difference of opinion. The trial court's decision here cannot be said to be error, and even if it were, it did not affect the substantial rights of the parties.

This limited retroactive application represents to us a reasonable accommodation of the factors cited above, and gives weight to society's interest in the finality of decisions like this one which were fairly determined under the law as it existed when the determinations were made.

Affirmed.