(620 P.2d 1173)

No. 51,239

DARRELL D. LANGHOFER, *Appellant,* v. SCOTT M. REISS, *Appellee,* v. YAMAHA INTERNATIONAL CORPORATION, a Corporation, and YAMAHA MOTORS, LTD., a Corporation, *Appellees.*

Opinion filed December 12, 1980.

*James B. Zongker,* of Render & Kamas, of Wichita, and *Ross A. Hollander,* of Nieto & Hollander, of Wichita, for the appellant.

*Lynn R. Johnson* and *Mark A. Johnson,* of Schnider, Shamberg & May, Chartered, of Kansas City, for the appellee Scott M. Reiss.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This is an appeal by the plaintiff from a jury verdict in a civil action which assessed the comparative fault for a collision between the motorcycles operated by the plaintiff and defendant. The issues on appeal are: (1) whether the verdict of the jury finding negligence on the part of the plaintiff Langhofer was supported by sufficient evidence; (2) whether the trial court erroneously failed to grant a directed verdict in favor of Langhofer and against the defendant Reiss at the close of all the evidence; and (3) whether Reiss is barred from collecting damages from Langhofer because his negligence was found to be equal to that of Langhofer.

On August 12, 1974, Darrell D. Langhofer, the plaintiff, and his family attended a family reunion at the city park in Plains. At

about 9:00 p.m., the Langhofers left the function. Mary Ellen, Darrell's wife, and the couple's son departed in the family station wagon, and Darrell and their daughter Debra followed on a motorcycle. Both drivers (Darrell D. Langhofer and Mary Ellen Langhofer) turned on their vehicles' driving lights as they left the park.

The Langhofers proceeded west toward their home on a straight four-mile stretch of Highway 160, which is a two-lane blacktop road running east and west on the northern edge of Plains. The road was characterized as fairly flat with slight rises in it. When the motorcycle carrying Darrell and Debra approached the family station wagon, Darrell sought to pass the vehicle. (It had been a custom in the Langhofer family to play a game in which whoever was with father would "beat mother home.") Prior to passing, Darrell blinked his lights to indicate he was beginning to pass and looked around the station wagon for oncoming traffic. When he was even with the station wagon, he saw the reflection of his motorcycle light or the lights of the station wagon in an oncoming sealed beam headlight. Within seconds, Langhofer collided with a motorcycle operated by the defendant Scott Reiss which had been traveling east on Highway 160 without its headlight burning. Reiss had not observed the Langhofer motorcycle until immediately prior to the impact.

Just before the accident, defendant Scott Reiss had been traveling east on Highway 160 in pursuit of an unidentified vehicle driven by a person who was suspected of stealing gasoline from a tank on the Reiss farm. Defendant began chasing the vehicle on his motorcycle, a 360 Yamaha, without turning on its headlight. He later turned the headlight on when he reached the top of a hill on the highway and glimpsed the alleged thief a mile or a mile and three-quarters ahead of him, because he needed his light to see the vehicle. As Reiss was approaching the area of the collision, the headlight of his motorcycle flickered, then came back on. Reiss continued the chase down the road, watching the alleged thief until his vehicle turned south on Copeland Road. Shortly thereafter, Reiss ran over bumps in the road near some gas pipes and his motorcycle headlight went completely out. He attempted to turn the light on again, but his efforts were unsuccessful. As he came over the rise of a hill, Reiss saw the headlights of the oncoming Langhofer car, and the headlight of the Lang-

hofer motorcycle suddenly appeared. The collision occurred immediately thereafter. Reiss testified that he was traveling at perhaps 50-70 mph at the time he hit the bumps in the road when his motorcycle headlight went out. He thought the Langhofer automobile was perhaps 300-400 feet away from him when his motorcycle headlight went out and he first saw the vehicle. Reiss did not believe that the parties could have seen each other until they reached the trees along the side of the road near the collision site.

The sun had set that evening at 8:40 p.m., and Reiss characterized the remaining light in the sky as dusk. Langhofer testified that there might have been some light in the sky, yet it was dark, although not pitch dark. There was a slight rise in the road not far from where the collision occurred, and there was some suggestion that a person might lose sight of a car due to the rise. However, there were no prohibitions to passing in the area.

Michael Cox, a deputy sheriff in Meade County, had measured and inspected the accident scene at the request of Yamaha's counsel. He was of the opinion that a motorcycle traveling one-half mile west of the point of impact and an automobile traveling one-half mile east of the point of impact would have continuous visibility of one another with their headlights burning. Trooper John Murphy of the Kansas Highway Patrol concurred with this opinion. Additionally, Ronald Seaman, a consulting engineer from Liberal, surveyed the area surrounding the point of impact. He testified that if the Langhofer automobile and the Reiss motorcycle had both had their lights on, they would have had continuous visibility of each other any place within 2,800 feet of either side of the point of impact.

In response to a petition filed against him by Langhofer, Reiss asserted a claim for damages by counterclaim against Langhofer, and third-party claims against the Yamaha Corporations. Langhofer followed with the inclusion of the Yamaha Corporations as additional parties against whom he sought recovery. In due course, the case came to trial.

At the close of all the evidence, both parties moved for directed verdicts, and both motions were denied. The jury found the plaintiff, Langhofer, 40% at fault; the defendant, Reiss, 40% at fault; and the third party defendants, Yamaha Corporations, 20% at fault. Separate new trials were granted both the plaintiff and

defendant, limited solely to the damage issues. At his damage trial, the jury found that Reiss had sustained damages in the amount of $205,000. The trial court therefore entered judgment in the amount of $123,000 to Reiss, which was 60% of the jury's damage figure. Langhofer was found liable for $82,000 of the amount, and the Yamaha Corporations for $41,000. The companion journal entry of judgment was filed on June 7, 1978. On June 5, 1979, Reiss' cross-claims against the defendants Yamaha Corporations were dismissed with prejudice. The Langhofers' claims against the defendants Yamaha Corporations were also dismissed with prejudice in an order filed on June 13, 1979. Finally, in a journal entry filed on June 14, 1979, the trial court approved the settlement of the claims of plaintiffs Darrell D. Langhofer and his daughter Debra Langhofer against Reiss, and accordingly, the actions brought against him were dismissed with prejudice. The plaintiff, Darrell Langhofer, filed a notice of appeal on April 2, 1979.

The first issue is whether the verdict of the jury finding negligence on the part of the plaintiff was supported by sufficient evidence. The plaintiff contends that the record is totally devoid of any evidence to sustain the jury's finding attributing 40% of the causal negligence for the accident to him. Specifically, he argues that his motorcycle had been operated with its headlight burning. Further, he claims he had no reason not to pass his wife's vehicle at or near the point of the collision because he was not in a no-passing zone, had checked for oncoming traffic, and could not possibly have seen the unlit motorcycle. He also asserts that the finding of the jury that the defendant unreasonably operated his motorcycle after he discovered that the headlight had gone out is inconsistent with the finding that the plaintiff was negligent.

The defendant counters that there were reasons that plaintiff should not have passed his wife's station wagon, e.g., the rise in the road, the rough spots in the passing lane of the road, of which plaintiff had knowledge. He also suggests that the family game of "beating mother home" constituted evidence of a breach of due care on the part of the plaintiff because plaintiff's attention would, of necessity, be diverted from his driving. Finally, he argues that the plaintiff should have seen the defendant's vehicle before its light flickered out, and that his failure to do so was an indication that he was preoccupied or that his vision was obscured by the terrain.

The relevant legal principles to be applied in an appellate review of the evidence required to support a verdict are contained in *Kleibrink v. Missouri-Kansas-Texas Railroad Co.,* 224 Kan. 437, 440-441, 581 P.2d 372 (1978):

"We have often stated a verdict or finding of a jury cannot be disturbed by the court on appeal if there is substantial competent evidence in the record to support it. (*Dold v. Sherow,* 220 Kan. 350, 356, 552 P.2d 945 [1976]; *Carnegie v. Gage Furniture, Inc.,* 217 Kan. 564, 538 P.2d 659 [1975]; and *Hallett v. Stone,* 216 Kan. 568, 534 P.2d 232 [1975].) Similarly when a verdict is attacked on the ground that it is contrary to the evidence, it is not the function of the Supreme Court to weigh the evidence or to pass upon the credibility of the witnesses. The court is concerned only with the evidence and all reasonable inferences to be drawn therefrom which support the verdict, and it is of no consequence that there may have been evidence which, if believed, would have supported a different verdict. (*Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, 620, 567 P.2d 1359 [1977] and cases cited therein; *Essmiller v. Southwestern Bell Tel. Co.,* 215 Kan. 74, 80, 524 P.2d 767 [1974]; *Montgomery v. Morgenson,* 213 Kan. 167, 515 P.2d 746 [1973]; *Jennings v. Missouri Pacific Railroad Co.,* 211 Kan. 389, 506 P.2d 1125 [1973]; and *Williams v. Union Pacific Railroad Co.,* 204 Kan. 772, 465 P.2d 975 [1970].)"

A review of the evidence in support of the jury's finding of negligence on the part of Langhofer reveals that although the Langhofer vehicle was traveling with its headlight on at all relevant times and was not in a no-passing zone, there was testimony that one or more rises existed in the highway that could partially or totally obscure an approaching vehicle. With respect to the point of impact, the evidence was that the visibility on either side of the rise would depend upon the distance the vehicles were from the point of impact. It also appears that the cited testimony concerned several different rises in the road and not just the rise upon which the Langhofer motorcycle was passing when it collided with the defendant.

Langhofer testified that he was passing on a rise or near the top of a rise but he stated that it was not much of a rise. In addition, he had checked for oncoming traffic and had not seen any. In his brief the defendant states that he did not believe the parties could have observed each other until they reached the point of the rise. However, there was testimony from a surveyor, the deputy sheriff of Meade County, and a trooper of the highway patrol which indicates that vehicles traveling with their lights on should have been able to see each other from approximately one-half mile on either side of the point of impact. Their evidence suggests that if

Reiss had been operating his motorcycle with the headlight on, Langhofer would have been able to see him and supports plaintiff's contention that it was appropriate for him to pass in that area. However, at least some evidence was introduced from which the jury could have concluded that Langhofer should not have been passing when he did.

The record also discloses that Langhofer was engaged in a family game, that is, following a family custom of "beating mother home," when the collision occurred. As defendant asserts, a jury might have reasonably found that Langhofer was so preoccupied with the game that he failed to adequately observe and assess the situation, or otherwise exercise the necessary caution to safely pass the station wagon.

This court is limited to a consideration of that evidence and all reasonable inferences that may be drawn therefrom which support the jury's verdict. We find there was substantial competent evidence to support the determination of the jury.

The plaintiff next contends that the trial court erroneously refused to grant his motion for a directed verdict because the evidence was insufficient to support a finding that his fault contributed to the collision. He claims that a person operating a motor vehicle owes little duty to another driver operating a vehicle without lights. He also asserts that the evidence showed that he was attempting to pass his wife's vehicle lawfully and with all due care, and he could not reasonably have foreseen the collision.

"In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict. (Following, *Simpson v. Davis,* 219 Kan. 584, Syl. 3, 549 P.2d 950.)" *Frevele v. McAloon,* 222 Kan. 295, Syl. ¶ 5, 564 P.2d 508 (1977).

Accord, *Service Iron Foundry, Inc. v. M. A. Bell Co.,* 2 Kan. App. 2d 662, 668, 588 P.2d 463 (1978).

Our inquiry is essentially the same as that already discussed above. There was evidence with respect to the conduct of Langhofer that might cause a jury to conclude that he breached his duty to exercise due care while operating his motorcycle and that this failure constituted at least one cause of the accident.

Therefore, the trial court did not err in refusing to direct a verdict in favor of the plaintiff and against the defendant Reiss.

Finally, Langhofer contends that Reiss is precluded from recovering damages against Langhofer because both parties were found to be 40% causally negligent and a party may only recover if his negligence is less than that attributed to the defendant against whom recovery is sought. His argument is premised on the assertion that the language of K.S.A. 60-258a(*a*) is ambiguous. He first asserts the legislature would have used more specific language had it wished to combine the negligence attributable to multiple tortfeasors for comparison with the plaintiff's negligence. Second, he argues that the legislative intent to impose liability based upon proportionate fault is not served if aggregation of negligence is permitted.

K.S.A. 60-258a(*a*) provides:

"(*a*) The contributory negligence of any party in a civil action shall not bar such party or said party's legal representative from recovering damages for negligence resulting in death, personal injury or property damage, if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made, but the award of damages to any party in such action shall be diminished in proportion to the amount of negligence attributed to such party. If any such party is claiming damages for a decedent's wrongful death, the negligence of the decedent, if any, shall be imputed to such party."

The provision permitting a plaintiff to recover damages "if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made" is not ambiguous and must be considered to mean that the trial court is to engage in aggregate comparison. That is, the claimant's percentage causal negligence must be compared with the combined negligence of the multiple parties rather than against each individual defendant.

The remaining statutory provisions of K.S.A. 60-258a do not defeat this construction.

The overwhelming consensus of the commentators discussing the Kansas Comparative Negligence Statute supports the position which calls for aggregated comparison, even if a plaintiff's fault is greater than or equal to that of one of the individual defendants.

Most law review articles on the subject find support for their position advocating "aggregate comparison" from the statutory language itself. Professor Victor Schwartz, however, is of the opinion that K.S.A. 60-258a(*a*) is somewhat ambiguous. He

opines that the abolition of joint and several liability which he believed to be the purpose of K.S.A. 60-258a(*d*) (the Kansas Supreme Court later so held in *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 [1978]) would obviate potentially harsh results to defendants whose fault was less than the plaintiff. This position, of course, may adversely affect plaintiffs. Schwartz, *Comparative Negligence in Kansas—Legal Issues and Probable Answers,* 13 Washburn L.J. 397, 414, *et seq.* (1974).

While recognizing the prevailing rule in actions involving multiple defendants calls for comparison between the negligence of the plaintiff and each separate defendant, Professor Kelly emphasizes that the language in the Kansas statute allows recovery if the plaintiff's negligence is less than that of the party "or parties" from whom damages are sought. Kelly concludes: "By addition of the phrase 'or parties' there is a clear statement that in cases involving two or more defendants the comparison is to be made collectively. The result is that a plaintiff will recover against each of the defendants so long as his negligence is less than the total negligence of all the defendants." Kelly, *Comparative Negligence—Kansas,* 43 J.B.A.K. 151, 154 (1974). See also Woods, *The New Kansas Comparative Negligence Act—An Idea Whose Time Has Come,* 14 Washburn L.J. 1, 12, *et seq.* (1974); Note, *Multiple Party Litigation under Comparative Negligence in Kansas—Damage Apportionment as a Replacement for Joint and Several Liability,* 16 Washburn L.J. 672 (1977).

Although aggregation may allow a plaintiff to recover from a defendant found to be less negligent, in possible contravention of the goal of modified comparative negligence (as in Kansas), it may avoid criticism leveled at other modified "statutes which permit a codefendant, partially at fault, to totally escape judgment." Davis, *Comparative Negligence—A Look at the New Kansas Statute,* 23 Kan. L. Rev. 113, 125 (1974).

A particularly analytical article, written after several judicial opinions were rendered in both the Kansas and federal district courts interpreting the statute, also addresses the question before this court.

"Sometimes referred to as the forty-nine percent or Wisconsin rule, the modified form of comparative negligence adopted in Kansas eliminates the defense of contributory negligence as a complete bar to recovery whenever the claimant's causal negligence is less than the aggregate causal negligence of the defendants.

"The aggregate comparison approach seemingly provided for by section 60-

258a(*a*) allows the plaintiff to recover if and only if the plaintiff's causal negligence is less than the sum of the causal negligence attributable to all of the defendant tortfeasors in the action. It is important to note, however, that the method of comparison provided for in section 60-258a(*a*) was not at issue in *Brown* [*v. Keill,* 224 Kan. 195] or *Miles* [*v.West,* 224 Kan. 284, 580 P.2d 876 (1978)]; therefore, this question is still undecided. According to the explicit language of paragraph (*a*), this aggregation for comparison purposes appears to include only those parties against whom the plaintiff has actually made a claim for recovery. The negligence of additional parties joined pursuant to paragraph (*c*) would not be included in this computation unless plaintiff made a claim against them. Many legislatures, including Kansas, decided that the better social policy was not to permit a plaintiff to recover from one who was less negligent than he. Ironically, the aggregation approach has the malady of defeating this major policy underlying the forty-nine percent rule. In a multiple tortfeasor case a claimant might be able to recover from a less negligent party. Arguably, the individual comparison approach could be sustained under the current language of paragraph (*a*). One could infer that the 'party or parties' language was merely intended to clarify the legislature's purpose to provide for individual comparison between claimant and defendant in the ordinary two-party negligence action and between the claimant and each of the defendants in multiparty negligence actions. This interpretation, while rejected by most of the commentators and counter to the current trend in comparative negligence jurisdictions, would avoid defeating one of the primary purposes of the forty-nine percent rule.

"Although the language of section 60-258a(*a*) can be read to support either approach to comparison, most commentators contend that section 60-258a(*a*) provides for the aggregate method. Consequently, in any multitortfeasor case in which the claimant's contributory negligence does not completely preclude him from recovering under section 60-258a(*a*), he would be entitled to recover damages from all parties against whom he has made a claim, including those who are individually less negligent than he. Other states, like Wisconsin, New Hampshire, and Vermont, provide for individual comparison. Unlike the aggregate approach, if a particular defendant's causal negligence is less than that of the plaintiff, the latter cannot recover from the defendant. The plaintiff, however, can still recover from any and all other defendants who are individually more negligent than he." Meltzer, *Brown and Miles: At Last, an End to Ambiguity in the Kansas Law of Comparative Negligence,* 27 Kan. L. Rev. 111, 121-123 (1978) (footnotes omitted).

Additional support for an interpretation requiring a comparison of a plaintiff's individual negligence with the collective negligence of multiple defendants may be found in the author's comments, Vernon's Kansas C. Civ. Proc. § 60-258a, § 60-258b (1978 Supp.) at 91. The same comment recognizes the near futility of resort to foreign authority for assistance in resolving any existing ambiguities as no state "has the exact combination of provisions as does Kansas," at 88.

Finally, PIK Civ. 2d 20.01 (1977) reads in part:

"A party will be entitled to recover damages if his fault is less than 50% of the

total fault of all parties. A party will not be entitled to recover damages, however, if his fault is 50% or more."

The Judicial Council Committee Comment following the instruction adopts the method of aggregating the negligence of all defendants. Its rationale was based upon the specific statutory language contained in K.S.A. 60-258a(*a*), most notably the use of the words "or parties." Further, "[t]he legislature could have shown a contrary intention by stating that a party may recover only if such party's negligence was less than the causal negligence of *any party* against whom claim for recovery is made." The quoted portion of the instruction has not yet been approved by the Kansas Courts with respect to aggregation of negligence. It has been analyzed in another context, *i.e.,* whether the jury should be apprised of the legal consequences of its verdict. See, *e.g., Thomas v. Board of Trustees of Salem Township,* 224 Kan. 539, 582 P.2d 271 (1978); *Cook v. Doty,* 4 Kan. App. 2d 499, 608 P.2d 1028, *rev. denied* 228 Kan. 806 (1980). Although the shortcomings of an interpretation of K.S.A. 60-258a requiring a comparison of the plaintiff's negligence with that of the combined negligence of multiple defendants have been recognized by the above commentators, the clear consensus favors adoption of such a construction for purposes of proportioning liability on the basis of fault.

The leading Kansas cases decided in the wake of the Kansas comparative negligence statute do not provide much enlightenment on the issue before this court. For example, *Brown v. Keill,* 224 Kan. 195, interpreted K.S.A. 60-258a to abolish joint and several liability and contribution among joint tortfeasors in comparative negligence cases. Rather, each defendant is to be liable for damages on the basis of proportionate fault. In Syllabus ¶ 6, the court set forth the intent and purpose of the act:

"The intent and purpose of the legislature in adopting K.S.A. 60-258a was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault."

Accord, *Miles v. West,* 224 Kan. 284, 580 P.2d 876 (1978); *Scales v. St. Louis-San Francisco Ry. Co.,* 2 Kan. App. 2d 491, 582 P.2d 300, *rev. denied* 225 Kan. 845 (1978).

The court in *Brown v. Keill* also first recognized that the percentage fault of persons who are not or may not be formal

parties ("phantom" parties) to the lawsuit should be considered in determining the proportionate liability of the defendant or defendants. Accord, *Geier v. Wikel,* 4 Kan. App. 2d 188, 603 P.2d 1028 (1979).

Other cases have considered whether the jury may be informed of the effects of its special verdict. See, *e.g., Thomas v. Board of Trustees of Salem Township,* 224 Kan. 539; *Cook v. Doty,* 4 Kan. App. 2d 499. None of these cases, then, is particularly instructive. However, they also do not contain any reasoning which would conflict with the approach we have adopted.

In a case involving a motion to dismiss in a products liability action, Judge Rogers of the Kansas Federal District Court observes that 60-258a(*a*) requires that the negligence of the plaintiff be less than the combined negligence of the defendants. He opines this encourages plaintiffs "to sue as many potential defendants as possible. The more defendants, the more likely that there will be a higher total of defendants' negligence against which the plaintiff's negligence will be compared . . . ." The court focused on the language "the party or parties against whom claim for recovery is made," contained in 60-258a(*a*). *Greenwood v. McDonough Power Equipment, Inc.,* 437 F. Supp. 707, 714 (D. Kan. 1977).

Although *Greenwood* is factually distinguishable from the instant action and is in no way binding on this court, this viewpoint is of some assistance. *Brown v. Keill,* 224 Kan. at 203.

Langhofer suggests that if the legislature intended that the aggregate negligence method be employed for comparison purposes, it would have used more specific language. Although there are states where the comparative negligence statutes may be more explicit than their Kansas counterparts (see, *e.g.,* Tex. Rev. Civ. Stat. Ann. art. 2212a [Vernon 1980 Supp.]; Nev. Rev. Stat. § 41.141 [1979]), they by no means compel a finding that the language of the Kansas act is inadequate to evidence an intent to combine the negligence of multiple defendants.

We find that K.S.A. 60-258a(*a*) should be construed to allow aggregating defendants' negligence when computing a plaintiff's entitlement to damages in a comparative negligence action. It is the logical extension of the Kansas Supreme Court's willingness to add "phantom" parties to assess fault and to abolish joint and several liability.

Judgment affirmed.