No. 60,072

MARILYN FLAGG and RICHARD COONROD, as Individuals and MARILYN FLAGG, as Administratrix of the Estate of VERA LOIS COONROD, deceased, *Appellants,* v. KURTIS I. LOY, Administrator of the Estate of THOMAS WESLEY COONROD, *Appellee,* and FURNAL TRUCK LINE, INC., and GREAT WESTERN CASUALTY, *Defendants.*

(734 P.2d 1183)

Opinion filed March 27, 1987.

*Timothy A. Short,* of Spigarelli, McLane & Short, of Pittsburg, argued the cause, and *Fred Spigarelli,* of the same firm, was with him on the brief for appellant.

*John I. O'Connor,* of White, O'Connor & Werner, P.A., of Pittsburg, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a personal injury and wrongful death action brought by Marilyn Flagg and Richard Coonrod against the estate of their deceased father, Thomas Wesley Coonrod, for the death of their mother, Vera Coonrod. Plaintiffs appeal from the trial court's granting of the defendant's motion for summary judgment.

On January 15, 1985, Vera Lois Coonrod was a passenger in an automobile driven by her husband, Thomas Wesley Coonrod. There was a collision involving the Coonrod automobile and a semi-tractor/trailer truck operated by Furnal Truck Line, Inc. Thomas Wesley Coonrod died in the accident and Vera Coonrod died from her injuries on February 1, 1985. The plaintiffs sued Kurtis I. Loy, administrator of the estate of their deceased father,

and Furnal Truck Line, Inc., and its insurer. Defendant Kurtis I. Loy filed a motion for summary judgment based upon the doctrine of interspousal tort immunity. The trial court ruled this action was barred by the doctrine of interspousal tort immunity and granted the motion for summary judgment. A certificate of Final Judgment, pursuant to K.S.A. 1986 Supp. 60-254(b), was incorporated into the Journal Entry of Summary Judgment. This appeal followed.

The issue before the court is whether the doctrine of interspousal tort immunity should be abrogated. Before determining the merits of plaintiffs' argument for abolishing the doctrine, we should first comment on plaintiffs' argument in the alternative that an exception should be created where both spouses are deceased. Rhode Island has created such an exception. *Asplin v. Amica Mutual Insurance Co., Inc.*, 121 R.I. 51, 394 A.2d 1353 (1978) (where one or both spouses are dead). This court has recognized an exception where the tortious act occurred prior to marriage, *O'Grady v. Potts*, 193 Kan. 644, 396 P.2d 285 (1964), and where the tort was intentional, *Stevens v. Stevens*, 231 Kan. 726, 647 P.2d 1346 (1982). However, because of our wrongful death statute, we are prevented from doing so in this case. K.S.A. 60-1901 provides:

"If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom *if the former might have maintained the action had he or she lived,* in accordance with the provisions of this article, against the wrongdoer, or his or her personal representative if he or she is deceased." (Emphasis added.)

The statute is clearly a survival statute. It creates no new cause of action for the heirs but, instead, provides that the cause of action survives if it could have been brought by the deceased had she lived. Mrs. Coonrod could not have maintained a personal injury action against the estate of her husband had she survived the accident. Therefore, absent abrogation of the doctrine of interspousal tort immunity, the plaintiffs would be barred from maintaining this action. The provisions of K.S.A. 60-1901 mandate such a result even though the traditional rationale for applying the doctrine of interspousal tort immunity is absent where one or both spouses are deceased. There is no marital harmony to preserve nor could the deceased spouses collude to

defraud another defendant or an insurance carrier. This illogical result mandates that we reexamine our previous decisions and determine if this court should continue to recognize the doctrine of interspousal immunity in Kansas.

This court first recognized the doctrine of interspousal immunity in *Sink v. Sink*, 172 Kan. 217, 239 P.2d 933 (1952). Since that time, this court has continued to recognize interspousal tort immunity. In *Sink*, this court cited G.S. 1949, 77-109, which provided in part: "The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state." The constitutional provisions pertaining to married women (Kan. Const. art. 15, § 6), and K.S.A. 23-201 and 23-203, commonly referred to as the Married Women's Act, were found not to modify the common-law doctrine of interspousal tort immunity and the doctrine was upheld because to not do so would be "contrary to public policy and [would] tend to disrupt the marital relation." 172 Kan. at 219.

In *O'Grady v. Potts*, 193 Kan. 644, Syl. ¶ 1, this court held: "A woman may, after becoming the wife of the defendant, continue to maintain an action against her husband for an alleged tortious act" which occurred prior to the marriage. Although the holding in *Sink* was cited with approval, the court reasoned that a "chose in action" is personal property owned by a woman at the time of her marriage and remains her "sole and separate property." *O'Grady v. Potts*, 193 Kan. at 648-49.

In *Fisher v. Toler*, 194 Kan. 701, 401 P.2d 1012 (1965), interspousal tort immunity was upheld even though a divorce action was pending when the personal injuries occurred.

In *Miles v. West*, 224 Kan. 284, 580 P.2d 876 (1978), this court again recognized the decision in *Sink*, but held it did not prevent a comparison of causal fault of both spouses in a comparative negligence case filed by both spouses against a third party tortfeasor.

This court recently affirmed the doctrine of interspousal tort immunity in *Guffy v. Guffy*, 230 Kan. 89, 631 P.2d 646 (1981). Justice Fromme, speaking for the majority, found "the doctrine of interspousal immunity presently existing in Kansas is vibrant and solidly based on the public policy of this State. It should not

be abrogated." 230 Kan. at 97. A well-reasoned and comprehensive dissent was written by Justice Prager (now Chief Justice) in which Justice Herd joined.

In *Stevens v. Stevens*, 231 Kan. 726, we recognized an exception to interspousal tort immunity for a willful and intentional tort committed by one spouse against the other. This exception was reaffirmed in *Ebert v. Ebert*, 232 Kan. 502, 656 P.2d 766 (1983).

The traditional reasons for retaining interspousal tort immunity are: (1) protection of family harmony and tranquility; (2) stare decisis; (3) absence of legislative action to abolish; and (4) possibility of fraud and collusion by the spouses where insurance coverage exists. These grounds, with the exception of fraud and collusion, were considered and recognized as grounds for the decisions in *Sink* and *Guffy*. We shall reexamine these grounds in light of present public policy and appellants' argument that interspousal tort immunity is an archaic doctrine which has been "orphaned by logic and reason."

Does the doctrine of interspousal tort immunity promote and protect family harmony and tranquility? We think not. The doctrine of interspousal tort immunity is a creature of common law evolving out of the legal fiction of the unity of husband and wife. The doctrine of unity was based upon the concept that, upon marriage, the wife's identity was merged into that of her husband and she was, for all legal purposes, a chattel of her husband. The wife could not sue or be sued without the joinder of her husband. By reason of our constitution (Art. 15, § 6) and the Married Women's Act, K.S.A. 23-201 and 23-203, the concept of unity of husband and wife is no longer recognized in Kansas. However, this did not prevent the majority in *Guffy* from justifying the continued recognition of interspousal tort immunity primarily on the premise that personal tort actions between spouses would destroy the peace and harmony of the marriage and therefore were contrary to public policy.

In *Coffindaffer v. Coffindaffer*, 161 W. Va. 557, 565, 244 S.E.2d 338 (1978), the West Virginia Supreme Court responded to the question of whether interspousal tort immunity promotes family harmony as follows:

"Undoubtedly family harmony is a laudable goal in this era of rising divorce

rates. However, it is difficult to perceive how any law barring access to the courts for personal injuries will promote harmony. If this were a valid sociological consideration, the Legislature could orchestrate even greater harmony by abolishing the statute giving the right to divorce. Moreover, there is an obvious fallacy in this argument, as under the Married Women's Act it has long been recognized that spouses may sue each other in regard to their property rights."

In *Shook v. Crabb*, 281 N.W.2d 616 (Iowa 1979), the Supreme Court of Iowa, in abolishing interspousal tort immunity, commented:

"While the state has an interest in encouraging marital harmony, to deny a forum for the redress of a wrong would do little to advance the compatibility of a married couple. It is difficult to see how denying access to the legal process could be said with any certainty to encourage domestic tranquility. Interspousal suits are not barred for the vindication of a property interest, § 597.3, The Code, or for personal labor, § 597.16, The Code. It is difficult to understand why negligence actions between spouses would be any more disruptive than a case involving property or for personal labor, both of which are now permitted." 281 N.W.2d at 619.

We find the cases from our sister states persuasive. We can no longer give judicial credence to the argument that personal tort actions between husband and wife will disrupt and destroy family harmony and tranquility.

Will interspousal tort immunity promote and encourage fraud and collusion? This court, in *Guffy*, did not discuss or rely upon the fraud and collusion theory in reaching its decision. However, appellee correctly argues that the threat of collusion and fraud has traditionally been relied upon as a reason to justify the doctrine of interspousal tort immunity. In *Luna v. Clayton*, 655 S.W.2d 893 (Tenn. 1983), the Tennessee Supreme Court responded to the fraud and collusion argument by stating:

"Our judicial system is not so ineffective that we must fear frivolous suits to deny relief to a plaintiff otherwise entitled simply because in some prospective application a litigant may be guilty of fraud or collusion. Built into the judicial process are numerous safeguards against fraudulent claims such as the deterrent of a perjury charge, modern discovery procedures, and the presentation of evidence to juries, all inherent in the Tennessee Rules of Civil Procedure and designed to eliminate surprise and uncover the truth by revealing all the relevant facts. These same factors also militate against claims that insurance companies may be disadvantaged tactically. Moreover, to the extent that insurance companies may fear collusive actions, they have the right to protect themselves by either restricting the scope of their coverage or adjusting premiums accordingly." 655 S.W.2d at 896-97.

In *Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980), this court rejected the fraud and collusion argument as justification for recognizing the doctrine of parental immunity as to motor vehicle accidents by concluding:

"We recognize a practical problem is that of possible collusion between parent and child aimed at securing an unjustified recovery from an insurance company. But the possibility of collusion exists to a certain extent in any case. Every day we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that the courts are quite adequate for this task. In litigation between parent and child, judges and juries would naturally be mindful of the relationship and would be even more on the alert for improper conduct. We further must recognize that, under provisions ordinarily included in an insurance policy, the insurance company has the right to disclaim liability when there is lack of cooperation with the insurance company on the part of the insured. Lack of cooperation may be found in inconsistent or contradictory statements by the insured or in collusion between the injured party and the insured which results in false statements to the company." 227 Kan. at 768-69.

We find this reasoning to be equally applicable to the present case and conclude that the "prevention of fraud and collusion" argument does not constitute a rational or logical ground for denying one spouse the right to maintain an action for the personal injuries resulting from the negligence of the other spouse.

Does the doctrine of stare decisis compel this court to continue to recognize interspousal tort immunity? The doctrine of stare decisis means "let the decision stand." It does give stability to the law by continuing to recognize legal principles which are viable, workable, and just. Justice Prager, in his dissenting opinion in *Guffy v. Guffy*, 230 Kan. at 105-06, cautioned:

"We must recognize, however, that pillars of a building have a way of decaying and deteriorating from age. Likewise, pillars of the law, like pillars in a building, must be repaired or replaced from time to time to prevent the whole structure from collapsing. The courts of this country must recognize that the law is a changing force and, under our system, courts have always had the obligation to change the law to meet the needs of the people in a changing society at particular times. Thus, the courts have a two-fold responsibility of both preserving the law and changing the law by developing new legal principles to meet modern needs. It, of course, takes a great deal of wisdom to know which objective is the most important at any particular time."

In *Ebert v. Ebert*, 232 Kan. 502, Justice McFarland, in

upholding the *Stevens* decision creating an exception to the doctrine of interspousal immunity for intentional tort, stated:

" 'Judicial devotion to the doctrine of *stare decisis* is indeed a justifiable concept to be followed by our courts. However, it cannot and must not be so strictly pursued to the point where our view is opaqued and reality disregarded. To do so is to envision the common law to be as immutable as the laws of the Medes and Persians, and thus render our system of jurisprudence forever impotent. The strength and genius of the common law lies in its ability to adapt to the changing needs of the society it governs.' " 232 Kan. at 503 (quoting *Brooks v. Robinson*, 259 Ind. 16, 22-23, 284 N.E.2d 794 [1972]).

The Maine Supreme Court, in *MacDonald v. MacDonald*, 412 A.2d 71 (Me. 1980), put stare decisis in its proper perspective:

"In recent years, too, we have forcefully stated that in matters of tort involving the marital relationship we cannot 'stubbornly, hollowly and anachronistically' stay bound by the 'shackles' of the 'formalisms' of the common law. [Citation omitted.] We have also stressed that by so declaring, we do not undermine the principle of *stare decisis*. Rather, we prevent it from defeating itself; we do not permit it to mandate the mockery of reality and the 'cultural lag of unfairness and injustice' [citation omitted] which would arise if the judges of the present, who like their predecessors cannot avoid acting when called upon, were required to act as captives of the judges of the past, restrained without power to break even those bonds so withered by the changes of time that at the slightest touch they would crumble." 412 A.2d at 74.

The argument is made that any changes in the doctrine of interspousal immunity should be left to the legislature. We rejected such an argument in *Ebert v. Ebert*, 232 Kan. at 503. Justice McFarland, speaking for this court, said:

"Defendant first contends the holding and rationale of *Stevens* were erroneous and should be reconsidered. The public policy arguments advanced by defendant-husband were considered in *Stevens* and rejected. The argument is then made that any alteration in interspousal immunity is a matter reserved for legislative determination. We do not agree. The interspousal immunity doctrine was judicially created and, in Kansas, is not the subject of statutory law. It is therefore appropriate for this court to make alterations to said doctrine. *E.g., Carroll v. Kittle*, 203 Kan. 841, 457 P.2d 21 (1969). See also Annot., Interspousal Tort Immunity, 92 A.L.R.3d 901, § 18."

Finally, in *Nocktonick v. Nocktonick*, 227 Kan. 758, this court rejected parental immunity as to automobile negligence cases. In *Guffy*, the majority refused to apply the rationale of *Nocktonick* to abrogate interspousal tort immunity and made the following distinction:

"The appellant argues that the expressed public policy in Kansas of requiring insurance on all motor vehicles as enunciated in the Kansas Automobile Injury Reparations Act virtually compels the abrogation of immunity when personal injury arises from the negligent operation of an insured motor vehicle. The premise on which this conclusion is reached is no longer true. The legislature has now amended the Kansas Automobile Injury Reparations Act by enacting Senate Bill No. 371. Effective January 1, 1982, an insurer is given and will no doubt exercise its right in liability insurance policies to exclude coverage of 'any bodily injury to any insured or any family member of an insured residing in the insured's household.'

"Also, the decision in *Nocktonick* was premised on personal injuries caused by the negligence of a parent in the operation of a motor vehicle. The court was aware of the insurance laws of the State in effect when the decision was rendered. 227 Kan. at 769, 770. In addition, that decision is distinguishable from the present question because the parent-child relationship had not been the subject of extensive judicial and legislative action when *Nocktonick* was decided. In *Nocktonick*, this court was not faced with the rule of stare decisis, as it is in the present case." 230 Kan. at 96.

Justice Prager, in his dissent, pointed out the fallacy of that distinction:

"Compulsory automobile liability insurance was the basis of this court's decision to reject parental immunity in automobile negligence cases in *Nocktonick*. The majority opinion distinguishes *Nocktonick* primarily on the subsequent enactment of legislation authorizing the exclusion of family members from automobile liability polices (overruling this court's conclusion in *DeWitt v. Young*, 229 Kan. 474, 625 P.2d 478 [1981], that such exclusions were void as contrary to legislative dictates of mandatory coverage). The majority's reliance on this enactment is misplaced. First, the statute does not affect the facts of this case. Mr. Guffy possessed liability insurance. This is not a case where Mrs. Guffy is challenging the validity of an exclusion within the policy. The only impediment to her recovery under the terms of the policy is this court's adherence to interspousal immunity. Second, the statute only authorizes the exclusion, and does not mandate its inclusion in all subsequent automobile liability insurance policies. There is nothing to keep the insurer and insured from contracting for liability coverage over that required by law, and extending it to family members. The availability of such insurance will be precluded, however, if this court maintains its position that a spouse cannot recover from a spouse-tortfeasor." 230 Kan. at 110-11.

In his dissent in *Guffy*, Justice Prager listed the states which had abolished interspousal tort immunity in whole or in part as of October 1980. Since that time, the following states should be added to the list:

Arizona — *Fernandez v. Romo*, 132 Ariz. 447, 646 P.2d 878 (1982)

| | |
|---|---|
| Montana | — *Miller v. Fallon County,* \_\_\_\_\_ Mont. \_\_\_\_\_, 721 P.2d 342 (1986) |
| Ohio | — *Shearer v. Shearer,* 18 Ohio St. 3d 94, 18 Ohio B. 129, 480 N.E.2d 388 (1985) |
| Pennsylvania | — *Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981) |
| Tennessee | — *Davis v. Davis,* 657 S.W.2d 753 (Tenn. 1983) |
| Utah | — *Stoker v. Stoker,* 616 P.2d 590 (Utah 1980) |

Thirty states have now abrogated the doctrine of interspousal tort immunity; additionally, twelve states have done so in part by creating exceptions, and eight states plus the District of Columbia have retained interspousal tort immunity. This trend toward abolishing interspousal tort immunity was prophesied in the Restatement (Second) of Torts § 895F, Comment f (1977):

"*Abrogation.* The last two decades have witnessed the definite rejection and abolition of the immunity between husband and wife in its entirety in a substantial number of jurisdictions. Numerous courts have followed a dissenting opinion of Mr. Justice Harlan in Thompson v. Thompson, (1910) 218 U.S. 611, and have held that the Married Women's Acts and the position of equality in which they were intended to place the spouses have removed all reason and justification for the immunity, and that one spouse is subject to liability to the other for any tort whether it is to property or to the person. The number of these decisions has been on the increase in recent years and has been encouraged by the spread and general use of liability insurance, particularly in automobile cases. The indications are clear that this is the future state of the law in all states."

This court has created several exceptions to the doctrine of interspousal immunity. The present case exemplifies the unjust and unfair consequence of interspousal tort immunity. Here, none of the traditional reasons for retaining interspousal tort immunity exist. The doctrine of interspousal tort immunity may have served a feudal society, but it does not serve a modern one. Although the majority in *Guffy* felt public policy was being served by continuing to recognize interspousal tort immunity, clearly, in the present case, justice is not. We cannot create another exception to the doctrine of interspousal tort immunity nor do we want to. To do so would continue to breathe life into a doctrine that has outlived its usefulness. The doctrine of inter-

spousal tort immunity, as previously noted in *Ebert*, is of judicial origin. It rests upon this court's decision in *Sink* and not upon our constitution or legislative act. It is a judicial anachronism that no longer merits recognition. We agree with appellant that the doctrine of interspousal tort immunity has been "orphaned by logic and reason," and we hereby abrogate the doctrine of interspousal tort immunity. *Sink, Guffy,* and all prior opinions of this court in conflict with this decision are overruled.

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

HOLMES and McFARLAND, JJ., dissenting.